02-10-342-CV REHEARING









 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 COURT OF APPEALS
 SECOND DISTRICT OF TEXAS
 FORT WORTH
  
 
 


 

NO. 02-10-00342-CV

 

 


 
 
 Columbia North Hills Hospital Subsidiary, L.P.,
 d/b/a North Hills Hospital
 
 
  
 
 
 APPELLANT
 
 
 
 
  
 V.
  
 
 
 
 
 Bulmaro Alvarez, Individually and as Representative
 of the Estate of Sandra Alvarez, Deceased and as Next Friend of Saray Alvarez
 and Marilyn Alvarez, Minors, and Sandy Alvarez, Individually
 
 
  
 
 
 APPELLEES
 
 


 

 

----------

 

FROM THE 96th
District Court OF Tarrant COUNTY

----------

 

MEMORANDUM
OPINION[1] ON
REHEARING

----------

 

          On April 7, 2011, this court
issued an opinion affirming in part and reversing in part the trial court’s
order denying Appellant Columbia North Hills Hospital Subsidiary, L.P.’s motion
to dismiss the health care liability claims asserted against it by Appellees
Bulmaro Alvarez, Individually and as Representative of the Estate of Sandra
Alvarez, Deceased and as Next Friend of Saray Alavarez and Marilyn Alvarez,
Minors, and Sandy Alvarez, Individually.  We withdraw our opinion and judgment
dated April 7, 2011, and substitute the following.

After
due consideration, we deny North Hills Hospital’s motion for rehearing and
motion for en banc reconsideration.  We grant Appellees’ motion for rehearing
to the extent that we modify our opinion to permit the trial court on remand to
determine whether to grant a thirty-day extension to Appellees to cure the
deficiencies in the expert report regarding Appellees’ pleaded direct liability
claims.  

I.  Introduction

          Appellant
Columbia North Hills Hospital Subsidiary, L.P., d/b/a North Hills Hospital
appeals from the trial court’s order denying its motion to dismiss the health
care liability claims asserted against it by Appellees Bulmaro Alvarez,
Individually and as Representative of the Estate of Sandra Alvarez, Deceased and
as Next Friend of Saray Alavarez and Marilyn Alvarez, Minors, and Sandy
Alvarez, Individually.  In three issues, North Hills Hospital complains that
although Appellees timely served and timely amended the expert report of Samuel
A. Tyuluman, M.D., the trial court nonetheless abused its discretion by
refusing to dismiss the claims against North Hills Hospital because Dr.
Tyuluman was not qualified to offer the opinions he did; because Dr. Tyuluman’s
report fails to set forth a standard of care, breach, or causation relating to
North Hills Hospital; and generally because the trial court did not dismiss Appellees’
claims.  Because the record before us reflects no abuse of discretion by the
trial court concerning Appellees’ vicarious liability claims against North
Hills Hospital, we will affirm the portion of the trial court’s order refusing
to dismiss those claims.  But because Dr. Tyuluman’s report does not
demonstrate that he is qualified to offer an opinion concerning the direct
liability causes of action that Appellees pleaded against North Hills Hospital,
we will reverse the portion of the trial court’s order denying North Hills
Hospital’s motion to dismiss those claims.

II.  Factual
and Procedural Background

          Forty-five-year-old
Sandy Alvarez died at North Hills Hospital after a vaginal hysterectomy was
performed on her.  Following the surgery, Mrs. Alvarez was transferred to the
recovery room where she experienced difficulties.  She was eventually diagnosed
as suffering from hemorrhagic shock and returned to the operating room for
surgical repair of the source of her internal bleeding.  Mrs. Alvarez died
approximately five hours after her second surgery.  Mrs. Alvarez’s autopsy
report indicates that she died as a result of “(1) complications of acute
hemorrhagic shock due to post-operative bleed and (2) morbid obesity with
hepatomegaly, severe fatty metamorphosis and early fibrosis.”

          Appellees
filed suit against North Hills Hospital alleging both vicarious liability and
direct liability theories of recovery.  Appellees alleged that North Hills
Hospital was vicariously liable for its nurses’ negligence and alleged various
acts and omissions by the North Hills Hospital nursing staff, including the
failure to invoke the chain of command.  Appellees alleged that North Hills
Hospital was directly liable for failing to adequately train its nurses,
failing to enforce its policies and procedures, and failing to adequately
supervise its nurses.  Appellees timely served on North Hills Hospital the
report and curriculum vitae of Dr. Tyuluman.  North Hills Hospital filed a
motion to dismiss alleging that Dr. Tyuluman was not qualified to testify on
the standard of care applicable to a hospital and alleging various deficiencies
in Dr. Tyuluman’s report.  After a hearing, the trial court ruled that

the expert reports
submitted by Plaintiffs constitute a good faith effort and meet the
requirements of Chapter 74 of the Civil Practice & Remedies Code, with the
exception that Plaintiffs are required to submit an amended report breaking out
specifically by name each defendant and/or group of defendants and the specific
elements relating to the standard of care, breach of the standard of care, and
causation for each defendant.

 

The
trial court gave Appellees thirty days to file the amended report; Appellees
timely served an amended report of Dr. Tyuluman.[2]  North Hills Hospital then
filed a second motion to dismiss again alleging that Dr. Tyuluman was not
qualified and alleging the same deficiencies in his report.  After a hearing,
the trial court denied North Hills Hospital’s second motion to dismiss, and
North Hills Hospital perfected this appeal. 

III.  Standard
of Review

We
review a trial court’s denial of a motion to dismiss for an abuse of
discretion.  Jernigan v. Langley, 195 S.W.3d 91, 93 (Tex. 2006); Maris
v. Hendricks, 262 S.W.3d 379, 383 (Tex. App.—Fort Worth 2008, pet. denied);
Ctr. for Neurological Disorders, P.A. v. George, 261 S.W.3d 285, 290–91
(Tex. App.—Fort Worth 2008, pet. denied).  To determine whether a trial court
abused its discretion, we must decide whether the trial court acted without
reference to any guiding rules or principles; in other words, we must decide whether
the act was arbitrary or unreasonable.  Downer v. Aquamarine Operators, Inc.,
701 S.W.2d 238, 241–42 (Tex. 1985), cert. denied, 476 U.S. 1159 (1986). 
Merely because a trial court may decide a matter within its discretion in a
different manner than an appellate court would in a similar circumstance does
not demonstrate that an abuse of discretion has occurred.  Id.  But a
trial court has no discretion in determining what the law is or in applying the
law to the facts, and thus “a clear failure by the trial court to analyze or
apply the law correctly will constitute an abuse of discretion.”  Walker v.
Packer, 827 S.W.2d 833, 840 (Tex. 1992) (orig. proceeding); Ehrlich v.
Miles, 144 S.W.3d 620, 624 (Tex. App.—Fort Worth 2004, pet. denied).

IV.  Statutory Standards
for Expert Reports

Chapter
74 requires a health care liability claimant to serve defendants with an expert
report and curriculum vitae within 120 days of filing the claim.  See
Tex. Civ. Prac. & Rem. Code Ann. § 74.351(a) (Vernon 2011).  The purpose of
the expert report requirement is to inform the defendant of the specific
conduct the plaintiff has called into question and to provide a basis for the
trial court to conclude that the claims have merit.  Bowie Mem’l Hosp. v.
Wright, 79 S.W.3d 48, 52 (Tex. 2002) (citing Am. Transitional Care Ctrs.
of Tex., Inc. v. Palacios, 46 S.W.3d 873, 878 (Tex. 2001)).  An expert
report “need not marshal all the plaintiff’s proof.”  Palacios, 46
S.W.3d at 878 (construing former Texas Revised Civil Statute article 4590i, section
13.01).   Additionally, the information in the report “does not have to meet
the same requirements as the evidence offered in a summary-judgment proceeding
or at trial.”  Id. at 879.

If
the defendant files a motion challenging the adequacy of the expert report, the
court shall grant the motion “only if it appears to the court, after hearing,
that the report does not represent an objective good faith effort to comply
with the definition of an expert report.”  Tex. Civ. Prac. & Rem. Code Ann.
§ 74.351(l).  The trial court may grant the claimant one thirty-day
extension to cure a deficiency in the initial expert report.  Id. §
74.351(c).

V.  Challenges
to Dr. Tyuluman’s Qualifications

A.  Dr. Tyuluman is
Qualified Concerning North Hills Hospital’s Nurses’ Conduct

 

Dr.
Tyuluman’s report demonstrates that he practices health care in a field of
practice that involves the same type of care or treatment as that delivered by
the nurses at North Hills Hospital.  It states, in pertinent part,

I practice obstetrics
and gynecology in Dallas, Texas and have been since 1986.  I am a Clinical
Professor of Obstetrics and Gynecology, University of Texas Southwestern
Medical School, Parkland Memorial Hospital.  I maintain board certification
with the American Board Obstetrics and Gynecology.  I am a Fellow of the
American College of Obstetrics and Gynecology and the American College of
Surgeons. . . . I was the Chairman of the Texas Health Resources, Presbyterian
Hospital Dallas, Quality Improvement Committee from 1998 until 2002.  I served
as an elected member of the Clinical Case Reviews Committee (Advisory
Committee) of Margot Perot Hospital of Texas Health Resources.   

 

Dr.
Tyuluman’s report demonstrates that he has knowledge of the accepted standards
of health care providers for the condition at issue and by training or
experience is qualified to offer an expert opinion regarding those accepted
standards.  The report states, in pertinent part,

Over the past 22
years, I have cared for patients just like Mrs. Alvarez hundreds of times.  I
am familiar with the standard of care for such patients based both on my personal
experience and my decades in the profession.  As a function of my practice in
obstetrics and gynecology, as well as the administrative positions noted above,
I am familiar with not only standards of care as they apply to gynecologists,
but also as they apply to other physicians caring for patients in the post
operative period following a vaginal hysterectomy with a suspicion of post
operative hemorrhage.  The standard of care is to return the patient in a
situation such as this case back to surgery to fix the bleed.  This standard
applies across lines of specialty. . . .  Further, I am familiar with the
standards of care as they apply to nurses and to the administration of the
department of gynecology from both a physician’s point of view and an
administrator’s.  I work with consulting physicians as well as recovery room
and postoperative nurses and am familiar with their training and standards as
they apply to them.  I am qualified to review this case from all of these
perspectives.  For further details, please see a copy of my CV, which is
attached.   

 

          In
part of its first issue, North Hills Hospital claims that the trial court abused
its discretion by determining that Dr. Tyuluman was qualified to render
opinions concerning post-operative nursing care or nurses invoking the chain of
command in a hospital setting.  North Hills Hospital argues that because Dr.
Tyuluman is not a nurse, he is not qualified to opine on the nursing standard
of care.  When a physician states that he is familiar with the standard of care
for both nurses and physicians and for the prevention and treatment of the
illness, injury, or condition involved in the claim, the physician is qualified
on the issue of whether the health care provider departed from the accepted
standards of care for health care providers.  See Baylor Med. Ctr. at
Waxachachie v. Wallace, 278 S.W.3d 552, 558 (Tex. App.––Dallas 2009, no
pet.) (holding doctor expert’s statement that he had worked with nurses, nurse
practitioners, physician’s assistants, and physicians, including emergency room
physicians, and was familiar with the standards of care that applied to such
health care providers in similar situations, was sufficient to show expert was
qualified to render opinion as to each type of health care provider); San
Jacinto Methodist Hosp. v. Bennett, 256 S.W.3d 806, 814 (Tex. App.––Houston
[14th Dist.] 2008, no pet.) (holding doctor expert qualified to render opinion
on nursing standard of care in field in which doctor practiced); see also
Jorgensen v. Tex. MedClinic, 327 S.W.3d 285, 288–89 (Tex. App.––San
Antonio 2010, no pet.) (holding doctor expert qualified to render opinion as to
standard of care for all health care providers concerning proper protocol for
administration of flu vaccine because standard of care did not vary among
health care providers).

As
quoted above, after setting forth his credentials and board certification in obstetrics
and gynecology, Dr. Tyuluman’s report indicates that he is familiar with the
standard of care for treating patients like Mrs. Alvarez, that he has cared for
hundreds of patients like her during the past twenty-two years, and that he is familiar
with the standards of care for recovery room and post-operative nurses caring
for patients like Mrs. Alvarez through his experience working with those nurses. 
Looking to the four corners of Dr. Tyuluman’s report, we hold that it
establishes that he is qualified to testify concerning North Hills Hospital’s
nurses’ conduct in the care of Mrs. Alvarez.  See Tex. Civ. Prac. &
Rem. Code Ann. § 74.402(b)(1), (2), (3) (Vernon 2011) (setting forth qualifications
required for experts providing statutory report); see also, e.g., Wallace,
278 S.W.3d at 558.  We hold that the trial court did not abuse its discretion
by determining that Dr. Tyuluman was qualified to offer expert medical opinions
concerning Appellees’ vicarious liability claims against North Hills Hospital
for the alleged negligence of its nurses, including negligence in failing to
invoke the chain of command.  We overrule the portion of North Hills Hospital’s
first issue contending that the trial court abused its discretion by
determining that Dr. Tyuluman was qualified to opine on the recovery room
nursing standard of care applicable to a patient like Mrs. Alvarez.

B.  Dr. Tyuluman is
Not Qualified Concerning North Hills Hospital’s Direct Liability

 

In
the balance of its first issue, North Hills Hospital contends that the trial
court abused its discretion by determining that Dr. Tyuluman was qualified to
render opinions concerning North Hills Hospital’s direct liability.  Appellees pleaded
that North Hills Hospital was directly liable for failing to adequately train
its nurses, failing to enforce its policies and procedures, and failing to
adequately supervise its nurses.  Looking only to the four corners of Dr.
Tyuluman’s report, we hold that it does not establish that he has any
familiarity, training, or experience that would allow him to opine as to the
standard of care for a hospital in formulating training programs, formulating
or enforcing its policies and procedures, or supervising its nurses.  See
Hendrick Med. Ctr. v. Conger, 298 S.W.3d 784, 788 (Tex. App––Eastland 2009,
no pet.).  As set forth above, Dr. Tyuluman is qualified to opine on the
standard of care applicable to recovery room nurses caring for a patient like Mrs.
Alvarez; but the standard of care applicable to a hospital in training its
nurses, in enforcing its policies and procedures, and in supervising its nurses
is an entirely separate standard.  See generally Denton Reg’l Med. Ctr. v.
LaCroix, 947 S.W.2d 941, 950–51 (Tex. App.––Fort Worth 1997, writ denied)
(discussing theories of direct hospital liability and applicable standard of
care).  Although Dr. Tyuluman’s report states that he has served as chairman of
a hospital quality improvement committee and a member of a clinical case review
committee, nowhere in the report does he state that as a result of this or
other experience he is familiar with the standard of care for a reasonable,
prudent hospital in training its nurses, in enforcing its policies and
procedures, and in supervising its nurses.  The report does not indicate that,
as a result of his committee service, Dr. Tyuluman gained experience in
formulating, implementing, or monitoring either hospital nurses’ training or enforcement
of hospital policies and procedures or hospital nurses’ supervision.  In short,
looking only to the four corners of Dr. Tyuluman’s report, we hold that it does
not establish that he is qualified to opine on these hospital standards of
care.   We sustain the portion of North Hills Hospital’s first issue contending
that the trial court abused its discretion by determining that Dr. Tyuluman was
qualified to opine on the standard of care applicable to a hospital in training
its nurses, in enforcing its policies and procedures, and in supervising its
nurses.  

In a
subargument included in its second issue, North Hills Hospital contends that
Dr. Tyuluman’s report does not provide a fair summary of how North Hills
Hospital breached the standard of care applicable to a hospital. Looking to the
four corners of Dr. Tyuluman’s report, we hold that it does not set forth what
the standard of care is for North Hills Hospital with respect to adequate
training of its nurses, enforcement of its policies and procedures, or
supervision of its nurses.  Accord Reed v. Granbury Hosp. Corp., 117
S.W.3d 404, 409 (Tex. App.––Fort Worth 2003, no pet.).  That is, Dr. Tyuluman’s
report does not state anywhere what the standard of care is for a reasonable,
prudent hospital in training its nurses, in enforcing its policies and
procedures, and in supervising its nurses.[3]  Accordingly, even if the
four corners of Dr. Tyuluman’s report had established that he was qualified to
opine on these standards of care applicable to a hospital, because his report
does not set forth these standards of care, we alternatively hold that any
determination by the trial court that Dr. Tyuluman’s report adequately set
forth these standards of care constituted an abuse of discretion.[4]

VI.  Challenges
to Elements of Statutory Expert Report

          In its second issue, North
Hills Hospital challenges the adequacy of Dr. Tyuluman’s report as to specific
statutory elements.  In its third issue, North Hills Hospital simply argues
that the trial court generally abused its discretion by failing to dismiss
Appellees’ health care liability claim with prejudice.  North Hills Hospital
argues its third issue together with its second issue in its brief.  North
Hills Hospital’s third issue therefore presents only the same arguments and
grounds for reversal as presented in its second issue.  We accordingly address
issues two and three together.  

A.  Nurses’
Breach of the Standard of Care

In
part of its second and third issues, North Hills Hospital contends that Dr.
Tyuluman’s report does not provide a fair summary of how the nurses breached
the applicable standard of post-operative nursing care.  

Dr.
Tyuluman’s report states, in pertinent part concerning the nurses’ breach of
the standard of care,

The standard of care
for North Hill[s] Hospital and its nursing staff caring for a patient like Mrs.
Alvarez in the PACU and CCU is to recognize the emergent and critical
post-operative bleed and to fully invoke the chain of command to make sure she
was returned to surgery by Dr. Allen or some other surgeon in a timely
fashion.  Additionally, North Hill[s] Hospital nurses were required, according
to the applicable standard of care, to properly evaluate operative blood loss. 
The nursing staff of North Hill[s] Hospital was negligent when they grossly
underestimated operative blood loss, not accounting for approximately 4800
cc’s.  The nursing staff of North Hill[s] Hospital was also negligent in their
post-operative management of Mrs. Alvarez, watching her decline throughout the
day without effectively utilizing the chain of command [] to make sure that Dr.
Allen or some other surgeon returned Mrs. Alvarez to surgery.  The standard of
care for the nursing staff requires that they both recognize and effectively
communicate the emergency nature of the situation and then, should Dr. Allen
not move quickly to surgery, go up the chain of command.  By 1900, the
Assistant CNO and Nurse Manager were at the bedside.  The standard of care
required that the nursing staff insist on their involvement much earlier. 

 

As
set forth above, Dr. Tyuluman’s report specifically identifies how North Hills
Hospital’s recovery room nurses breached the standard of care:  they did not
recognize the emergent and critical post-operative bleed; they watched Mrs.
Alvarez decline throughout the day; they did not properly evaluate Mrs.
Alvarez’s blood loss; they failed to account for 4800 cc’s of lost blood; and they
failed to invoke the chain of command to get the Assistant CNO and Nurse
Manager to come to Mrs. Alvarez’s bedside much sooner.

    
     Looking to the four corners of Dr. Tyuluman’s report, we hold that the
trial court did not abuse its discretion by determining that the report
adequately sets forth how the recovery room, post-operative nurses breached the
standards of care set forth in the report.  We overrule the portion of North
Hills Hospital’s second and third issues contending otherwise. 

B.  Causation
Element of Nurses’ Negligence

In
the balance of its second and third issues, North Hills Hospital argues that
Dr. Tyuluman’s report fails to adequately set forth how the nurses’ negligence
proximately caused Mrs. Alvarez’s death.  Dr. Tyuluman’s report provides,

The failure of all
defendants to provide surgery to control the hemorrhage, continuing to administer
pressor agents when contraindicated, failure to properly monitor intraoperative
blood loss, and failure to recognize the compromised status of the patient
during this process are proximate cause of the death of [Mrs.] Alvarez.  Had
prompt surgery been performed, it is more likely than not that the injury would
have been easily found and corrected, preventing further blood loss.  I have
performed such surgeries to locate and repair injury following vaginal
hysterectomy and know from my experience the effectiveness of such procedures. 
Had ordinary care been provided during the operative and post operative period,
in all medical probability, Mrs. Alvarez would be alive today. 

 

Looking
to the four corners of Dr. Tyuluman’s report, we hold that the trial court did
not abuse its discretion by determining that the report adequately sets forth
how the nurses’ negligence proximately caused Mrs. Alvarez’s death.  See Bowie
Mem’l Hosp., 79 S.W.3d at 52.  The fact that a trier of fact may ultimately
reject Dr. Tyuluman’s opinion regarding the nurses’ causation––i.e., that the
nurses failed to properly monitor Mrs. Alvarez’s blood loss, failed to
recognize her compromised status, and failed to invoke the chain of command, proximately
causing Mrs. Alvarez’s death––does not render the report insufficient.  See
Hayes v. Carroll, 314 S.W.3d 494, 507 (Tex. App.––Austin 2010, no pet.). 
The report sufficiently informs North Hills Hospital of the specific conduct of
its nurses that Appellees are questioning and provides a basis for the trial
court to determine that Appellees’ claims have merit.  This is all that is
required of an expert report.  See Leland v. Brandal, 257 S.W.3d 204,
206–07 (Tex. 2008) (explaining that expert report is meant to serve two
purposes: (1) to inform the defendant of the specific conduct the claimant is
questioning and (2) to provide a basis for the trial court to conclude the
claims have merit). 

We
overrule the remainder of North Hills Hospital’s second and third issues
contending otherwise.

VII.  Conclusion

Having
sustained the portion of North Hills Hospital’s first issue claiming that the
four corners of Dr. Tyuluman’s report does not establish that he was qualified
to opine on the standard of care applicable to a hospital in training its
nurses, in enforcing its policies and procedures, and in supervising its
nurses, we reverse the trial court’s September 13, 2010 order to the extent
that it failed to dismiss Appellees’ direct liability claims against North
Hills Hospital for allegedly failing to adequately train its nurses, failing to
enforce its policies and procedures, and failing to adequately supervise its
nurses.  Because Appellees did not have an opportunity to amend this defect in
Dr. Tyuluman’s report––the trial court specifically directed the deficiency to
be addressed during the thirty-day extension that it granted––and because the
trial court has not had an opportunity to consider whether Appellees should be
granted an extension of time to cure the deficiency found by this court to
exist in Dr. Tyuluman’s report concerning Appellees’ pleaded direct liability
claims, we remand those claims to the trial court for a determination of
whether to dismiss them or to grant a thirty-day extension of time for
Appellees to cure the deficiencies found by this court in Dr. Tyuluman’s report
regarding Appellees’ pleaded direct liability claims.  See TTHR Ltd. P’ship
v. Moreno, No. 02–10–00334–CV, 2011 WL 2651813, at *12–14 (Tex. App.—Fort
Worth July 7, 2011, no pet. h.) (mem. op. on reh’g); Estorque v. Schafer,
302 S.W.3d 19, 25 (Tex. App.––Fort Worth 2009, no pet.).

Having
overruled the balance of North Hills Hospital’s first issue and its second and
third issues and having held that the trial court did not abuse its discretion
by determining that Dr. Tyuluman was qualified to opine on the standard of care
applicable to North Hills Hospital’s recovery room nurses or by determining
that Dr. Tyuluman’s report adequately sets forth the nurses’ breach of the
standard of care and how that breach proximately caused Mrs. Alvarez’s death, we
affirm the trial court’s September 13, 2010 order to the extent that it denied
North Hills Hospital’s motion to dismiss Appellees’ vicarious liability claims.[5]


 

 

SUE WALKER
JUSTICE

 

PANEL:  LIVINGSTON, C.J.;
GARDNER and WALKER, JJ.

DELIVERED:  July 28, 2011









[1]See Tex. R. App. P. 47.4.





[2]All subsequent references
to Dr. Tyuluman’s report are to his amended report.





[3]Dr. Tyuluman’s report does
state that “[t]he standard of care required the hospital to have adequately
trained and qualified PACU and ICU nurses” and that “[t]he standard also
required that the hospital have and enforce proper chain of command policies.”  But
these statements are very broad, general, and conclusory; they fall short of
stating any standard of care as to what specific training or policies were
required.  See Bowie Mem’l Hosp., 79 S.W.3d at 53 (“A conclusory report
does not meet the Act’s requirements, because it does not satisfy the Palacios
test.”).





[4]Because we have held that
Dr. Tyuluman’s report does not establish that he was qualified to opine on the
hospital’s standard of care on the direct liability claims pleaded by Appellees
and because we have alternatively held that, in any event, Dr. Tyuluman’s
report does not adequately state the standard of care applicable to a hospital
concerning Appellees’ pleaded theories of direct liability, we need not address
North Hills Hospital’s contention that Dr. Tyuluman’s report does not
adequately set forth causation concerning Appellees’ direct liability theories
of recovery.  See Tex. R. App. P. 47.1 (requiring appellate court to
address in opinion only issues necessary to disposition of appeal).





[5]This court’s November 30,
2010 order staying discovery in the trial court is lifted.