

# COURT OF APPEALS
### SECOND DISTRICT OF TEXAS
### FORT WORTH

## NO. 02-10-00334-CV

TTHR LIMITED PARTNERSHIP                                                        APPELLANT
D/B/A PRESBYTERIAN HOSPITAL
OF DENTON

V.

CLAUDIA MORENO,                                                                    APPELLEE
INDIVIDUALLY AND AS NEXT
FRIEND OF FREDDY CORONADO,
A MINOR

----------

### FROM THE 362ND DISTRICT COURT OF DENTON COUNTY

----------

## MEMORANDUM OPINION ON REHEARING[1]

----------

We have considered Appellant's motion for partial rehearing. We deny the motion but withdraw our opinion of March 17, 2011, and we substitute the following to clarify, as requested, what the trial court should consider granting Moreno an extension to do.

---

[1]*See* Tex. R. App. P. 47.4.

TTHR Limited Partnership d/b/a Presbyterian Hospital of Denton (Presbyterian) appeals the trial court's order on its motion to dismiss. Presbyterian moved to dismiss based on the alleged failure of Appellee Claudia Moreno, individually and as next friend of Freddy Coronado, a minor, to comply with chapter 74 of the civil practice and remedies code. We will affirm in part and reverse and remand in part.

**Background Facts**

Moreno was admitted to Presbyterian in January 2007, complaining of pain and swelling associated with her pregnancy with twin boys. Moreno's obstetrician, Dr. Marc Wilson, was out of town. Nurses in the labor and delivery department had difficulty monitoring Moreno and paged the physician on call, Dr. Lori Gore-Green, at 8:00 p.m. on January 21. Dr. Gore-Green did not see Moreno until 8:03 a.m. on January 22. Dr. Wilson arrived and also saw Moreno that morning.

Dr. Wilson induced labor, and the first twin was delivered without a problem. Dr. Wilson then used forceps and a "vacuum extraction" device to assist with the delivery of the second twin, Freddy. Freddy suffered blood loss and a "hypoxic ischemic insult" that allegedly caused damage to his nervous system and his kidneys.

Moreno filed suit against Presbyterian, Dr. Gore-Green, and Dr. Wilson alleging that their negligence caused Freddy's injuries. In an attempt to comply with chapter 74 of the civil practice and remedies code, Moreno filed an expert

2

report by Dr. Samuel Tyuluman with her petition. *See* Tex. Civ. Prac. & Rem. Code Ann. § 74.351 (West Supp. 2010). Presbyterian objected to Dr. Tyuluman's report on the grounds that, as an obstetrician and gynecologist, Dr. Tyuluman is not qualified to opine on kidney damage and neurological injuries. Moreno then filed an expert report by Dr. Billy Arant, who is board certified in pediatric nephrology. Presbyterian objected to this report as well and filed a motion to dismiss for failure to comply with chapter 74. Presbyterian argued that Dr. Arant's report failed to address causation and that Moreno still had not provided a report addressing the neurological injuries.

A hearing was held on Presbyterian's motion, at which the trial court found that the reports were sufficient as to the kidney damage claims, but insufficient as to the neurological damage claims. The trial court granted a thirty-day extension "to make a causal link for the neurological damage."

Moreno then filed a third expert report by Dr. John Seals, a neurologist. Presbyterian objected to Dr. Seals's report, arguing it failed to address causation, and it moved again to dismiss the claims against it. A hearing was held and the court denied Presbyterian's motion. Presbyterian appeals.

3

**Standard of Review**

We review a trial court's denial of a motion to dismiss for an abuse of discretion. *Jernigan v. Langley*, 195 S.W.3d 91, 93 (Tex. 2006); *Maris v. Hendricks*, 262 S.W.3d 379, 383 (Tex. App.—Fort Worth 2008, pet. denied); *Ctr. for Neurological Disorders, P.A. v. George*, 261 S.W.3d 285, 290–91 (Tex. App.—Fort Worth 2008, pet. denied). To determine whether a trial court abused its discretion, we must decide whether the trial court acted without reference to any guiding rules or principles; in other words, we must decide whether the act was arbitrary or unreasonable. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex. 1985), *cert. denied*, 476 U.S. 1159 (1986). Merely because a trial court may decide a matter within its discretion in a different manner than an appellate court would in a similar circumstance, does not demonstrate that an abuse of discretion has occurred. *Id.* But a trial court has no discretion in determining what the law is or in applying the law to the facts, and thus "a clear failure by the trial court to analyze or apply the law correctly will constitute an abuse of discretion." *Walker v. Packer*, 827 S.W.2d 833, 840 (Tex. 1992) (orig. proceeding); *Ehrlich v. Miles*, 144 S.W.3d 620, 624 (Tex. App.—Fort Worth 2004, pet. denied).

**The Chapter 74 Expert Report Requirement**

The purpose of the expert report requirement is to inform the defendant of the specific conduct the plaintiff has called into question and to provide a basis for the trial court to conclude that the claims have merit. *Bowie Mem'l Hosp. v.*

4

*Wright*, 79 S.W.3d 48, 52 (Tex. 2002) (citing *Am. Transitional Care Ctrs. of Tex., Inc. v. Palacios*, 46 S.W.3d 873, 879 (Tex. 2001)). An expert report "need not marshal all the plaintiff's proof." *Palacios*, 46 S.W.3d at 878 (construing former Texas Revised Civil Statute art. 4590i, § 13.01). Additionally, the information in the report "does not have to meet the same requirements as the evidence offered in a summary-judgment proceeding or at trial." *Id.* at 879.A defendant may meet the requirements of chapter 74 through multiple reports. Tex. Civ. Prac. & Rem. Code Ann. § 74.351(i). A single report need not "address all liability and causation issues with respect to all physicians or health care providers or with respect to both liability and causation issues for a physician or health care provider." *Id.* But read together, the reports must provide a "fair summary" of the experts' opinions regarding the "applicable standards of care, the manner in which the care rendered by the physician or health care provider failed to meet the standards, and the causal relationship between that failure and the injury, harm, or damages claimed." *Id.* § 74.351 (r)(6).

If the defendant files a motion challenging the adequacy of the expert report, the court shall grant the motion "only if it appears to the court, after hearing, that the report does not represent an objective good faith effort to comply with the definition of an expert report." *Id.* § 74.351(l). An expert report is defined as a report that "provides a fair summary of the expert's opinions . . . regarding applicable standards of care, the manner in which the care rendered by the physician or health care provider failed to meet the standards, and the

5

causal relationship between that failure and the injury, harm, or damages claimed." *Id.* § 74.351(r)(6). The trial court may grant one thirty-day extension to cure a deficiency in the expert report. *Id.* § 74.351(c).

**Discussion**

Moreno sued Presbyterian for failing to provide adequate training to employees, adequately-trained personnel, adequate policies and procedures, and adequate supervision of employees. She brought claims for negligence as well as vicarious liability for the negligent actions of the nurses and the doctors. For each of those claims, Moreno was required to submit expert reports that set forth the standard of care, the breach of that standard, and the causal connection between the breach and the damages suffered. *Id.* § 74.351(r)(6).

**1. The direct liability claims**

Dr. Tyuluman's report stated that the standard of care for a hospital is to "have properly trained nursing staff, appropriate policies and procedures and to make sure the nurses follow them, including a chain of command policy." The only reference by Dr. Tyuluman to a breach of the standards set forth in his report was to summarily allege that the hospital and nurses violated each of those standards.

Neither Dr. Arant nor Dr. Seals attempted to describe any standard or breach by the hospital. Instead their reports were specifically directed to fulfilling the requirement of showing a causal connection between the failure of the health care providers to meet the standards of care and the injury, harm, or damages

6

claimed. Dr. Arant opined that the proximate cause of Freddy's kidney injuries was asphyxia prior to birth. His report contains no opinion concerning how the actions of the hospital caused asphyxia prior to birth. Dr. Seals's report states that the damage to Freddy's brain was the result of "an Hypoxic-Ischemic process which occurred during the labor and delivery process." Once again, the doctor's report is completely devoid of any opinion as to how the hospital violated a standard of care that caused this brain injury. Nowhere in any of the reports does an expert provide insight on Presbyterian's staff training, its policies or procedures, or what its "chain of command" policy is.

Section 74.351(r)(6) of the civil practice and remedies code specifically requires an expert report to include a fair summary of *the manner* in which care rendered by the health care provider failed to meet the standards of care. *Id.* Considering all the reports together, they still do not inform the hospital of what specific conduct Moreno is calling into question. This deficiency fails to provide a basis for the trial court to assess whether the claims have merit. *See Shaw v. BMW Healthcare, Inc.*, 100 S.W.3d 8, 12 (Tex. App.—Tyler 2002, pet. denied) ("To constitute a good-faith effort, the report must inform the defendant of the specific conduct the plaintiff has called into question and provide a basis for the trial court to determine that the claims have merit."); *RGV Healthcare Associates, Inc. v. Estevis*, 294 S.W.3d 264, 270–71 (Tex. App.—Corpus Christi 2009, pet. denied) (holding that an expert report was deficient because it "did not speak as to how RGV Healthcare's direct conduct, such as the implementation of

7

procedures, policies, or rules that could have ensured vigilant care, deviated from the applicable standard of care"). These reports merely provide an expert conclusion about a breach by the hospital and therefore do not constitute a good faith effort. *See Palacios*, 46 S.W.3d at 880 (holding that an expert report's conclusory statements "do not put the defendant or the trial court on notice of the conduct complained of" and does not represent a good faith effort). The expert reports were therefore deficient as to the direct liability claims against Presbyterian, and the trial court abused its discretion by not finding them to be so. *See Estorque v. Schafer*, 302 S.W.3d 19, 25 (Tex. App.—Fort Worth 2009, no pet.) (noting that a report does not comply with statute if it omits the statutorily required discussion of the standards of care, breach, or causation). We affirm Presbyterian's issue as to those claims.

## 2. The vicarious liability claims for the nurses' alleged negligence

Dr. Tyuluman's report stated,

> The standard of care for nurses is to adequately monitor the patient and to keep the physician informed of the patient's condition. If the physician doesn't respond to notification of inability to monitor the patient, then the standard of care requires the nurse to invoke the chain of command. Further, if a nurse observes a physician misusing forceps and/or a vacuum extractor, the nurse likewise has to invoke the chain of command. According to the chart, this was not done.

However, he fails to state how the nurses violated any of those standards. An expert report "must inform the defendant of the specific conduct the plaintiff has called into question." *Palacios*, 46 S.W.3d at 879. Dr. Tyuluman's report

8

does not discuss what a nurse should do if monitoring the patient is impossible. It does not explain what the "chain of command" is or how and when a nurse should invoke it. It does not opine on the proper length of time a nurse should wait for a physician before invoking the chain of command or whether the amount of time Moreno's nurses waited, if they did, fell below the standard of care. It also does not state that the nurses did, in fact, observe a physician misusing forceps or a vacuum extractor, or if they did, how and when they should have initiated the chain of command. Dr. Tyuluman's report does not fairly describe what acts he thinks are negligent, nor does it "provide a basis for the trial court to conclude that the claims have merit." *Id.* Neither of the other expert reports attempt to address the standard of care or breach by the nurses. Further, neither Dr. Arant's nor Dr. Seals's reports describe any causal relationship between any action or inaction of the nurses and the injuries complained of. We therefore hold that the trial court abused its discretion by finding the reports sufficient as to these claims. *See Davisson v. Nicholson*, 310 S.W.3d 543, 559 (Tex. App.—Fort Worth 2010, no pet.) (holding that reports that failed to fault defendant for plaintiff's injuries were inadequate). We sustain Presbyterian's issue as to these claims.

### 3. The vicarious liability claims for the doctors' alleged negligence

Dr. Tyuluman's report states that the standard of care for an obstetrician is "to carefully monitor the patient and develop a plan for ultimate delivery;" "to obtain regular non-stress tests and biophysical profiles of the patient;" "to come

9

and evaluate the mother and fetus, especially when called by the nursing staff;" "to make sure the patient is adequately monitored and if that is not done or cannot be done, then to proceed with a different plan;" and when it was discovered that the second twin was in distress, "to quickly deliver the second baby." He states that the doctor should have "avoided" use of forceps and the vacuum extractor, and that the doctors should have decided to perform a Cesarean section when they realized they could not monitor the babies and again when the second twin went into distress. Dr. Tyuluman also states that because Moreno was of "advanced maternal age," the doctors should have obtained "regular non-stress tests and biophysical profiles" and that the doctors' failure to do this fell below the standard of care. While Dr. Tyuluman was unqualified to testify as to the causal link between the delivery and Freddy's kidney and neurological injuries, Dr. Arant and Dr. Seals are qualified and did opine on the causal connection.

Taken together, the expert reports set out the standard of care, breach, and causal relationship for the vicarious liability claims for the doctors' alleged negligence. They therefore provide enough information to fulfill the two purposes of the expert report—to inform the defendant of the specific conduct the plaintiff has called into question, and to provide a basis for the trial court to conclude that the claims have merit. *See id.* The trial court did not abuse its discretion in refusing to dismiss these claims. We overrule Presbyterian's issue as to these claims.

10

## Chapter 74's Thirty-Day Extension

If an expert report has not been served, chapter 74 requires the dismissal of the plaintiff's claims.  Tex. Civ. Prac. & Rem. Code Ann. § 74.351(b).  It further provides that if a report is considered not to have been served "because elements of the report are found deficient, the court may grant one 30-day extension to the claimant in order to cure the deficiency."  *Id.* § 74.651(c).

Moreno already received one extension.  However, that extension was only to cure the deficiency "regarding the causal relationship between the failure to meet applicable standards of care of the hospital and/or nurses and Freddy Coronado's alleged neurological injury."  The trial court specifically directed what deficiency should be addressed.  It otherwise found the expert reports sufficient. Moreno therefore had no cause to amend the expert reports in any other regard.[2]

*See Leland v. Brandal*, 257 S.W.3d 204, 207 (Tex. 2008) ("The statute does not

---

[2]*But see Women's Clinic of South Tex. v. Alonzo*, No. 13-10-00159-CV, 2011 WL 1106698, at *3, *6 (Tex. App.—Corpus Christi Mar. 24, 2011, no pet.) (mem. op.) (refusing to remand for consideration of a thirty-day extension because plaintiff already took advantage of an extension).  In *Alonzo*, the trial court's order directed Alonzo "to cure the report's deficiency" and "to produce a report that attempts to cure the deficiencies in [the] current expert report."  *Id.* at *1.  Because the defendant had claimed there were a number of deficiencies, Alonzo moved the court to specify what deficiencies she was to correct.  *Id.* The trial court did not so specify, and Alonzo attempted to correct only one of the purported deficiencies.  The appeals court noted that by virtue of the defendant's objections and motion to dismiss, Alonzo "was on notice of the potential deficiencies in her report and acted at her own risk in failing to remedy those alleged deficiencies . . . ."  *Id.* at *3.  In *Alonzo*, the trial court arguably found more than one element deficient.  In this case, the trial court specifically noted in its order what it found deficient, and Moreno was only ordered to cure the specified deficiency.

allow for an extension unless, and until, elements of a report are 'found deficient.'"). Moreno attempted to cure the deficiency as directed by the court by filing the report by Dr. Seals, and we hold that Dr. Seals's report adequately summarized the causal relationship between events at delivery and Freddy's neurological injuries.[3] What we have not found sufficient is the description of the hospital's standard of care, its breach of that standard, and the breach of the nursing standard of care by the nurses. Because the trial court did not find the reports deficient on those issues, the trial court did not determine whether Moreno should be granted an extension to cure those deficiencies or if it should dismiss the claims against the hospital as well as the vicarious liability claims for the nurses' alleged negligence.

Contrary to Presbyterian's assertion in its motion for rehearing, this court is not allowing Moreno a second extension. Rather, we remand the case so that the trial court has the opportunity to determine whether Moreno should be granted a thirty-day extension to cure what we have held to be deficient. *See Leland*, 257 S.W.3d at 207 (noting that every court of appeals that has addressed a deficient report has remanded the case to the trial court for the trial court to determine whether to grant an extension); *see also Gates v. Altaras*, No. 10-09-00236-CV, 2010 WL 965960, at *3 (Tex. App.—Waco Mar. 10, 2010, no pet.) (remanding the case to the trial court to consider an extension despite the

---

[3]We also agree with the trial court that Dr. Arant's report satisfactorily states the causal relationship between the delivery and Freddy's kidney injuries.

fact that the parties previously agreed to one extension in the trial court because the report was not found to be deficient until the appeal). Specifically, the trial court must determine whether to afford Moreno the opportunity to serve an expert report which sufficiently (1) sets forth the standard of care for the hospital and describes the manner in which the hospital failed to meet that standard; and (2) describes the manner in which the nurses breached the standard of care that Dr. Tyuluman described as it pertains to them. *See* Tex. Civ. Prac. & Rem. Code Ann. § 74.351(r)(6) (requiring an expert report to "provide[] a fair summary of the expert's opinions . . . regarding applicable standards of care, the manner in which the care rendered by the physician or health care provider failed to meet the standards, and the causal relationship between that failure and the injury, harm, or damages claimed"); *Ctr. For Neurological Disorders, P.A. v. George*, 261 S.W.3d 285, 296 (Tex. App.—Fort Worth 2008, pet. denied) ("The dismissal remedy under subsection 74.351(b) is expressly made 'subject to' subsection 74.351(c), and thus the legislature intended that the right to have a claim dismissed under the subsection be limited by the trial court's ability to grant an extension of time to cure any deficiencies.").

## Conclusion

We affirm the trial court's order as to the vicarious liability claims for the doctors' actions. As for the direct liability claims against Presbyterian and the vicarious liability claims for the nurses' actions, we reverse. We remand the case to the trial court for further proceedings consistent with this opinion.

LEE GABRIEL
JUSTICE

PANEL: DAUPHINOT, MEIER, and GABRIEL, JJ.

DELIVERED: July 7, 2011