

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 02-12-00009-CV

COLUMBIA NORTH HILLS
HOSPITAL SUBSIDIARY, L.P.
D/B/A NORTH HILLS HOSPITAL

APPELLANT

V.

BULMARO ALVAREZ,
INDIVIDUALLY AND AS
REPRESENTATIVE OF THE
ESTATE OF SANDRA ALVAREZ,
DECEASED AND AS NEXT FRIEND
OF SARAY ALVAREZ AND
MARILYN ALVAREZ, MINORS,
AND SANDY ALVAREZ,
INDIVIDUALLY

APPELLEES

----------

FROM THE 96TH DISTRICT COURT OF TARRANT COUNTY

----------

## OPINION

----------

Columbia North Hills Hospital Subsidiary, L.P. d/b/a North Hills Hospital

brings this interlocutory appeal challenging the trial court's denial of its motion to

dismiss under section 74.351 of the Civil Practice and Remedies Code. *See* Tex. Civ. Prac. & Rem. Code Ann. § 74.351 (West 2011). In five issues, North Hills contends that the trial court abused its discretion by (1) granting appellees— Bulmaro Alvarez, individually and as representative of the estate of Sandra Alvarez, deceased, and as next friend of Saray Alvarez and Marilyn Alvarez, minors, and Sandy Alvarez, individually—a thirty-day extension to amend their expert report, (2) finding appellees' expert qualified to give an expert report, (3 & 4) finding the expert report sufficient to meet the statutory report requirement, and (5) failing to dismiss appellees' health care liability claim with prejudice. We affirm.

**Background**

This case is on appeal to this court for the second time. *See Columbia N. Hills Hosp. Subsidiary, L.P. v. Alvarez*, No. 02-10-00342-CV, 2011 WL 3211239 (Tex. App.—Fort Worth July 28, 2011, no pet.) (mem. op. on reh'g). Forty-five-year-old Sandra Alvarez died at North Hills after having a hysterectomy. *Id.* at *1. Following the surgery, she was transferred to the recovery room where she experienced difficulties. *Id.* She was eventually diagnosed as suffering from hemorrhagic shock and returned to the operating room for surgical repair of the source of her internal bleeding. *Id.* Alvarez died approximately five hours after her second surgery. *Id.* Her autopsy report indicates that she died as a result of "(1) complications of acute hemorrhagic shock due to post-operative bleed and

(2) morbid obesity with hepatomegaly, severe fatty metamorphosis and early fibrosis." *Id.*

Appellees sued North Hills alleging both vicarious liability and direct liability theories of recovery. *Id.* at *2. Appellees alleged that North Hills was vicariously liable for its nurses' negligence, including the failure to invoke the chain of command. *Id.* Appellees further alleged that North Hills was directly liable for failing to adequately train its nurses, failing to enforce its policies and procedures, and failing to adequately supervise its nurses. *Id.* Appellees timely served the report and curriculum vitae of their designated expert, Dr. Tyuluman, on North Hills. *Id.* North Hills filed a motion to dismiss alleging that Dr. Tyuluman was not qualified to testify on the standard of care applicable to a hospital and also alleging various deficiencies in his report. *Id.* After a hearing, the trial court ruled that

> the expert reports submitted by [Appellees] constitute a good faith effort and meet the requirements of Chapter 74 of the Civil Practice & Remedies Code, with the exception that [Appellees] are required to submit an amended report breaking out specifically by name each defendant and/or group of defendants and the specific elements relating to the standard of care, breach of the standard of care, and causation for each defendant.

*Id.*

The trial court gave appellees thirty days to file the amended report. Appellees timely served an amended report of Dr. Tyuluman.[1] *Id.* North Hills

---

[1]All subsequent references to Dr. Tyuluman's report are to his amended report.

then filed a second motion to dismiss again alleging that Dr. Tyuluman was not qualified and alleging the same deficiencies in his report. *Id.* After a hearing, the trial court denied North Hills's second motion to dismiss, and North Hills appealed to this court. *Id.*

We held in our first opinion that Dr. Tyuluman was not qualified to give an opinion on the standard of care for the direct liability claims against North Hills and that his statement of the standard of care applicable to the hospital for the direct liability claims was insufficient to meet the statutory requirement. *Id.* at *5. Because the trial court had not granted appellees a thirty-day extension to cure the deficiencies we identified, we remanded so that the trial court could determine whether an extension should be granted to cure those deficiencies. *Id.* at *7. We affirmed the trial court's denial of the motion to dismiss on the vicarious liability claims against North Hills. *Id.* at *8.

On remand, the trial court granted appellees a thirty-day extension to cure the deficiencies. Appellees filed a new report from Charles M. Brosseau, Jr., a hospital management consultant. North Hills objected to the new report and filed a motion to dismiss, arguing that appellees were not allowed to submit a new report and also alleging various deficiencies with the new report. After holding a hearing, the trial court overruled North Hills's objections and denied its motion to dismiss. North Hills then perfected this second interlocutory appeal.

## Standard of Review

We review a trial court's denial of a motion to dismiss for an abuse of discretion. *Jernigan v. Langley*, 195 S.W.3d 91, 93 (Tex. 2006); *Ctr. for Neurological Disorders, P.A. v. George*, 261 S.W.3d 285, 290–91 (Tex. App.—Fort Worth 2008, pet. denied); *Maris v. Hendricks*, 262 S.W.3d 379, 383 (Tex. App.—Fort Worth 2008, pet. denied). To determine whether a trial court abused its discretion, we must decide whether the trial court acted without reference to any guiding rules or principles; in other words, we must decide whether the act was arbitrary or unreasonable. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex. 1985), *cert. denied*, 476 U.S. 1159 (1986). Merely because a trial court may decide a matter within its discretion in a different manner than an appellate court would in a similar circumstance does not demonstrate that an abuse of discretion has occurred. *Id.* at 242. But a trial court has no discretion in determining what the law is or in applying the law to the facts; thus, "a clear failure by the trial court to analyze or apply the law correctly will constitute an abuse of discretion." *Walker v. Packer*, 827 S.W.2d 833, 840 (Tex. 1992) (orig. proceeding); *Ehrlich v. Miles*, 144 S.W.3d 620, 624 (Tex. App.—Fort Worth 2004, pet. denied).

## Thirty-Day Extension

In its first issue, North Hills contends that the trial court erred in granting appellees a thirty-day extension to correct the deficiencies in Dr. Tyuluman's report upon remand. North Hills argues that our holding in its previous appeal

5

prohibited appellees from submitting a new report on the standard of care and breach and required them to amend Dr. Tyuluman's report to show his qualifications to opine on the standard of care applicable to the direct liability claims. According to North Hills, since appellees' motion for an extension showed only that they intended to submit a new report from a different expert, the trial court should not have granted the request for an extension and should not have considered the new report from Brosseau.

To the extent that North Hills argues that the trial court abused its discretion in granting the thirty-day extension, the trial court's ruling is not subject to appellate review. *See Ogletree v. Matthews*, 262 S.W.3d 316, 321 (Tex. 2007).

The remainder of North Hills's argument in this issue is that the trial court erred in considering Brosseau's report in satisfaction of the statutory requirements. North Hills argues that because appellees had already received one extension to correct Dr. Tyuluman's statement of the standard of care, the extension after remand gave appellees two extensions in disregard of section 74.351(c), which allows for only one extension. *See* Tex. Civ. Prac. & Rem. Code Ann. § 74.351(c).

A health care liability claimant is required to serve defendants with an expert report and curriculum vitae of the report's author within one hundred and twenty days of filing the claim. *Id.* § 74.351(a). The report must be written by an expert competent to give an opinion on the matters in the report, must inform the

6

defendant of the specific conduct called into question, and must provide a basis for the trial court to determine that the claim has merit. *Id.* § 74.351(r)(5)(B), (r)(6), 74.402 (West 2011); *Bowie Mem'l Hosp. v. Wright*, 79 S.W.3d 48, 52 (Tex. 2002). If the defendant files a motion challenging the adequacy of the expert report, the court shall grant the motion only if it appears to the court that the report does not represent a good faith effort to comply with the statutory requirements. Tex. Civ. Prac. & Rem. Code Ann. § 74.351(*l*). The court may also grant "one 30-day extension to the claimant in order to cure the deficiency." *Id.* § 74.351(c). When curing a deficiency in a report, a plaintiff may submit an amended report from the same expert or supplement the original report with a new report from a different expert. *Lewis v. Funderburk*, 253 S.W.3d 204, 208 (Tex. 2008).

If a trial court finds that an expert report does not meet the statutory requirement, grants the plaintiff a thirty-day extension to correct the deficiency, and finds the report sufficient after the extension—and we subsequently reverse the trial court's decision——we may allow the trial court to grant another thirty-day extension on remand if we hold that the report is deficient in a different manner than found by the trial court when granting the original thirty-day extension. *See TTHR Ltd. P'ship v. Moreno*, No. 02-10-00334-CV, 2011 WL 2651813, at *5 (Tex. App.—Fort Worth July 7, 2011, pet. granted) (mem. op. on reh'g); *see also Columbia N. Hills Hosp. Subsidiary*, 2011 WL 3211239, at *7 (applying *Moreno*). This is not a second extension in violation of section 74.351(c); rather it is the

extension the plaintiff could have received had the trial court given him notice about this defect after the defendant's first objection that the report was deficient. *See TTHR Ltd. P'ship*, 2011 WL 2681813, at *5.

In the first appeal, we remanded the case to the trial court for it to determine whether to grant a thirty-day extension to allow appellees to correct the deficiencies this court identified, which were that the report did not show that Dr. Tyuluman was qualified to opine on the standard of care as it applied to the direct liability claims and that his statement of the standard of care applicable to North Hills on the direct liability claims was insufficient. *Columbia N. Hills Hosp. Subsidiary*, 2011 WL 3211239, at *5, *7. Despite North Hills's argument that the trial court had already granted an extension to cure the statement of the standard of care, the deficiencies we identified on appeal are different from those originally found by the trial court. In giving the original thirty-day extension, the trial court had instructed appellees to "break[] out specifically by name each defendant and/or group of defendants and the specific elements relating to the standard of care, breach of the standard of care, and causation for each defendant." *Id.* at *2. Thus, the trial court granted the original extension to make separate statements of each standard of care, breach, and causation for each defendant rather than directing appellees to make a different statement of the standard of care for *each claim* against North Hills. Nor did the trial court address Dr. Tyuluman's qualifications to make such statements relating to the direct liability claims against North Hills. Therefore, we conclude and hold that the trial court

8

was authorized to consider Brosseau's report addressing both the qualifications of the expert *and* the statement of the standard of care for the direct claims against North Hills because those elements were found to be deficient for the first time in the first appeal. *See* Tex. Civ. Prac. & Rem. Code Ann. § 74.351(i); *Leland v. Brandal*, 257 S.W.3d 204, 207 (Tex. 2008) ("The statute does not allow for an extension unless, and until, elements of a report are found deficient, and that did not occur in this case until the court of appeals so held."); *Lewis*, 253 S.W.3d at 208; *Columbia N. Hills Hosp. Subsidiary*, 2011 WL 3211239, at *7.

We overrule North Hills's first issue.

**Brosseau's Qualifications**

In its second issue, North Hills contends that the trial court abused its discretion in finding Brosseau qualified to give an expert opinion on the direct liability claims. North Hills argues that (1) Brosseau is not qualified to give an opinion on post-operative nursing care because he is not a trained, educated nurse and must rely on the opinions of others to determine whether the care of nurses fell below the standard of care and (2) he is not qualified to opine on causation because he is not a physician.

An expert report concerning standards of care for health care providers must be authored by one who qualifies as an expert. Tex. Civ. Prac. & Rem. Code Ann. §§ 74.351(r)(5)(B), 74.402; *Davisson v. Nicholson*, 310 S.W.3d 543, 550 (Tex. App.—Fort Worth 2010, no pet.) (op. on reh'g). A person may qualify

9

as an expert on the issue of whether a health care provider departed from accepted standards of care only if the person

> (1) is practicing health care in a field of practice that involves the same type of care or treatment as that delivered by the defendant health care provider, if the defendant health care provider is an individual, at the time the testimony is given or was practicing that type of health care at the time the claim arose;

> (2) has knowledge of accepted standards of care for health care providers for the diagnosis, care, or treatment of the illness, injury, or condition involved in the claim; and

> (3) is qualified on the basis of training or experience to offer an expert opinion regarding those accepted standards of health care.

Tex. Civ. Prac. & Rem. Code Ann. § 74.402(b). Persons practicing health care include those serving as consultants while being licensed, certified, or registered in the same field as the health care provider. *Id.* § 74.402(a)(2). A person is qualified on the basis of training or experience if he is certified by a state or national professional certifying agency or has substantial experience in the field and is actively practicing health care services relevant to the claim. *Id.* § 74.402(c). To determine whether the author of a report is qualified, we may look only at the four corners of the report and the author's curriculum vitae. *Barber v. Mercer*, 303 S.W.3d 786, 794 (Tex. App.—Fort Worth 2009, no pet.) (citing *Am. Transitional Care Ctrs. of Tex., Inc. v. Palacios*, 46 S.W.3d 873, 878 (Tex. 2001)).

The direct liability claims against North Hills allege that the hospital is directly liable for failing to adequately train its nurses, enforce its policies and

10

procedures, and adequately supervise its nurses. Therefore, an expert making a report as to the standard of care involved in such a claim must have adequate familiarity, training, or experience with formulation of training programs, formulation or enforcement of hospital policies and procedures, and supervision of nurses to be qualified to make such a report. *See Columbia N. Hills Hosp. Subsidiary*, 2011 WL 3211239, at *5; *see also Reed v. Granbury Hosp. Corp.*, 117 S.W.3d 404, 409–13 (Tex. App.—Fort Worth 2003, no pet.) (holding that expert must have knowledge of hospital policies and procedures for direct liability claim against hospital); *Hendrick Med. Ctr. v. Conger*, 298 S.W.3d 784, 788 (Tex. App.—Eastland 2009, no pet.) (holding that expert must have knowledge, training, or experience concerning standard of care in formulation of hospital policies and procedures for report on direct liability claim).

Looking at the four corners of the report and curriculum vitae, we conclude that they establish that Brosseau is qualified to opine as to the standard of care applicable to North Hills. According to the report, Brosseau has been a hospital management consultant since 1996 and has been certified as a Fellow of the American College of Healthcare Executives since 2001. He has a Masters degree in Healthcare Administration and has been working as a hospital administrator or administration consultant for over thirty years. In that time, Brosseau has been responsible for the "preparation and implementation of hospital policies and procedures, including but not limited to, policies and procedures regarding environment of care, treatments, training/competencies,

11

nursing, chain of command, human resources and leadership." He states that because of his knowledge, training, and experience, he is familiar with the standard of care applicable to the administrative and managerial duties that hospitals owe their patients.

The qualifications listed in Brosseau's report are sufficient to qualify him as an expert under section 74.402 because he has shown that he is a practicing health care provider with the proper education, certifications, and experience to qualify as an expert in hospital administration under the statute. *See* Tex. Civ. Prac. & Rem. Code Ann. § 74.402(b); *Hollingsworth v. Springs*, 353 S.W.3d 506, 516–18 (Tex. App.—Dallas 2011, no pet.) (holding that Brosseau is qualified to opine on standard of care applicable to hospital administration).

North Hills argues that Brosseau is not qualified to opine on the standard of care because he is not a nurse or physician and therefore must rely on the opinions of others when determining whether direct patient care was deficient. However, such expertise is not required for this particular claim. We held in our prior opinion in this case that Dr. Tyuluman had such expertise on matters of the *medical* care of nurses and could opine on the standard of care as it applied to direct nursing care for the vicarious liability claims against the hospital but that he was not qualified to opine on the direct liability claims. *See Columbia N. Hills Hosp. Subsidiary*, 2011 WL 3211239, at *4–5. For these direct liability claims, the expert needed to demonstrate expertise in "the standard of care applicable to a hospital in training its nurses, in enforcing its policies and procedures, and in

12

supervising its nurses, which is an entirely separate standard." *Id.* at *5 (citing *Denton Reg'l Med. Ctr. v. LaCroix*, 947 S.W.2d 941, 950–51 (Tex. App.—Fort Worth 1997, pet. denied), for the general discussion of the standard of care for direct hospital liability). Thus, Brosseau has shown the kind of expertise required for the direct liability claims.

To the extent that medical expert testimony is required to address the underlying medical procedures and nursing care at issue, Dr. Tyuluman's report may be taken together with Brosseau's to address how the underlying nursing care relates to the alleged failures of administrative care. *See* Tex. Civ. Prac. & Rem. Code Ann. § 74.351(i) (any report requirement can be satisfied by offering more than one report); *Columbia N. Hills Hosp. Subsidiary*, 2011 WL 3211239, at *4–5 (holding Dr. Tyuluman's report adequate as to the underlying medical care); *Reed*, 117 S.W.3d at 409 (holding medical expert testimony necessary to explain underlying medical procedures). Because the direct liability claims are about the failure in North Hills's administrative care, Brosseau does not need to be a nurse or physician to qualify as an expert for the direct liability claims; rather, he needs to be an experienced hospital administrator. *See Hollingsworth*, 353 S.W.3d at 516. Thus, the trial court did not abuse its discretion in finding Brosseau qualified to make an expert report on the standard of care for the direct liability claims against North Hills.

In the remainder of its second issue, North Hills contends that Brosseau is not qualified to opine on how the actions of North Hills caused Alvarez's death

13

because he is not a physician. North Hills is correct in that only a physician can give an opinion on causation in an expert report. Tex. Civ. Prac. & Rem. Code Ann. § 74.351(r)(5)(C). However, as we explain below, Brosseau did not offer an opinion on causation, nor was it necessary for him to do so.

Therefore, we overrule North Hills's second issue.

## Brosseau's Expert Report

In its third and fourth issues, North Hills contends that the trial court abused its discretion in finding Brosseau's report sufficient to meet the statutory requirements of chapter 74 of the Civil Practice and Remedies Code. North Hills argues that the report does not adequately set forth the standard of care, does not show how North Hills breached the standard of care, and does not show how North Hills caused Alvarez's death because it is too conclusory.

**Applicable Law**

The purpose of the expert report requirement is to inform the defendant of the specific conduct the plaintiff has called into question and to provide a basis for the trial court to conclude that the claims have merit. *Palacios*, 46 S.W.3d at 878. A report that merely states the expert's conclusions about the standard of care, breach, and causation does not fulfill these purposes. *Id.* at 879. Rather, the expert must explain the basis of his statements to link his conclusions to the facts. *Bowie Mem'l Hosp.*, 79 S.W.3d at 52. An expert report "need not marshal all the plaintiff's proof," and the information in the report "does not have to meet the same requirements as the evidence offered in a summary-judgment

14

proceeding or at trial." *Palacios*, 46 S.W.3d at 878–79. A plaintiff may meet the requirements of chapter 74 through multiple reports. Tex. Civ. Prac. & Rem. Code Ann. § 74.351(i). A single report need not "address all liability and causation issues with respect to all physicians or health care providers or with respect to both liability and causation issues for a physician or health care provider." *Id.* But read together, the reports must provide a "fair summary" of the experts' opinions regarding the "applicable standards of care, the manner in which the care rendered by the physician or health care provider failed to meet the standards, and the causal relationship between that failure and the injury, harm, or damages claimed." *Id.* § 74.351(r)(6); *Barber*, 303 S.W.3d at 791.

If the defendant files a motion challenging the adequacy of the expert report, the court shall grant the motion "only if it appears to the court, after hearing, that the report does not represent an objective good faith effort to comply with the definition of an expert report." Tex. Civ. Prac. & Rem. Code Ann. § 74.351(*l*). In reviewing the sufficiency of the reports, we look no further than the information contained in the reports themselves. *Bowie Mem'l Hosp.*, 79 S.W.3d at 52.

**Standard of Care and Breach**

The standard of care for a hospital is what an ordinary, prudent hospital would do under the same or similar circumstances. *Palacios*, 46 S.W.3d at 880. Identifying the standard of care is critical: whether a defendant breached his or her duty to a patient cannot be determined absent specific information about

15

what the defendant should have done differently.  *Id.*  When an expert report opines on the standard of care and how it was breached, it is not sufficient to simply state that the expert knows the standard of care and concludes that it was not met.  *Id.*  While a "fair summary" is something less than a full statement of the applicable standard of care and how it was breached, even a fair summary must set out what care was expected, but not given.  *Id.*

Looking at the four corners of the reports, we conclude that Brosseau's report adequately states the standard of care applicable to the hospital and how the hospital breached that standard.  Brosseau states that the standard of care requires hospital administration to ensure that its employees are competent, to have and enforce policies and procedures, and to ensure that those policies are being implemented.  Specifically, Brosseau states that hospitals must train their nurses to be competent and to understand the hospitals' policies and procedures.  This includes training nurses to (1) make appropriate assessments and reassessments of patients, (2) develop appropriate nursing plans of care, and (3) become effective patient advocates by using the hospital's chain of command to keep a patient from harm.  The standard of care, according to Brosseau, also includes requiring hospital management and administration to formulate and enforce policies to facilitate this training and to ensure nurse competency.  Brosseau states that a hospital must have policies regarding the chain of command that can "be emergently and immediately invoked to involve hospital management to ensure safe resolution of the patient's condition" and

16

that resolution "must include not only nursing management, but also the Medical Department Chair and/or the Chief of Staff."

Relying on Dr. Tyuluman's opinion that surgery was the only proper treatment to stop internal bleeding, Brosseau concluded that the standard of care dictated that the nurses, nurse management, and administrators use a plan of care and the chain of command to get surgeons, the Chief of Staff, or the Department Chair involved to help get Alvarez to surgery quickly. Brosseau opined that the standard of care was breached because North Hills did not ensure that its nurses were competent to care for Alvarez and the required policies and procedures for nursing administration were either not in place or not enforced. He concluded that the failure to ensure competency was evidenced by Dr. Tyuluman's findings that the nurses failed to appreciate Alvarez's deteriorating condition and failed to invoke the chain of command to get her the care she needed. Brosseau further concluded that the failure to have, implement, and enforce policies on patient assessment and advocacy was evidenced by the failure of nurses, nurse managers, and administrators to implement a plan of care to get Alvarez to surgery when her condition deteriorated as well as by the belated involvement of the Assistant CNO and Nurse Manager and the lack of involvement of the Department Chair and Chief of Staff in Alvarez's care.

We hold that Brosseau's report, taken together with Dr. Tyuluman's assessment of the medical care involved, sufficiently ties his conclusions to facts

17

to put the hospital on notice of what care he opined was required but not given. *See Palacios*, 46 S.W.3d at 879; *Hollingsworth*, 353 S.W.3d at 517–18 (holding similar statements by Brosseau to be sufficient to show standard of care and breach).  Therefore, we overrule North Hills's third issue.

**Causation**

In its fourth issue, North Hills contends that Brosseau's report did not provide a fair summary of how its conduct caused Alvarez's death.  Appellees concede that Brosseau's report is not being proffered as an expert opinion on causation but instead argue that Dr. Tyuluman's report is sufficient on the issue of causation.

When a plaintiff relies on one report to show the standard of care and breach and a second report to show causation, we must look to both reports to see whether the breach identified in the standard-of-care report is sufficiently linked to the cause of the alleged injury in the causation report.  *See Salais v. Tex. Dep't of Aging & Disability Servs.*, 323 S.W.3d 527, 536 (Tex. App.—Waco 2010, pet. denied) (holding when paramedic expert report offered only for standard of care and breach, court examines whether physician's report adequately links breach to alleged injury); *Martin v. Abilene Reg'l Med. Ctr.*, No. 11-04-00303-CV, 2006 WL 241509, at *4–5 (Tex. App.—Eastland Feb. 2, 2006, no pet.) (mem. op.) (holding report of nurse expert on standard of care and breach sufficiently linked to physician expert report on causation to satisfy report requirement); *cf. Gannon v. Wyche*, 321 S.W.3d 881, 894–97 (Tex. App—

18

Houston [14th Dist.] 2010, pet. denied) (holding physician's report on causation not sufficiently linked to nurse expert report on standard of care and breach when statement of causation specifically referred to physicians only).

North Hills's argument that the Brosseau report's statement of causation is conclusory is based upon the assumption that we cannot consider Dr. Tyuluman's report because we have already ruled it to be "inadequate as it pertains to the direct liability claims against North Hills." However, North Hills misconstrues our holding. We held only that Dr. Tyuluman was not qualified to opine on the standard of care as it related to the direct liability claims against North Hills, expressly declining to examine the adequacy of his statement of causation with respect to the direct liability claims. *Columbia N. Hills Hosp. Subsidiary*, 2011 WL 3211239, at *5 n.4. Further, a physician does not need to be qualified to opine on the standard of care for a direct liability claim to be qualified to opine on causation; a physician needs only to show how he is qualified to opine on the cause of the plaintiff's injury. *See Salais*, 323 S.W.3d at 535–36 (holding separate physician report on causation must show qualification to opine on causation when report on paramedic standard of care and breach found to be sufficient). Accordingly, our only inquiry is whether Dr. Tyuluman's report adequately links the injury to the breaches identified by Brosseau. *See Salais*, 323 S.W.3d at 536; *Martin*, 2006 WL 241509, at *4–5.

Dr. Tyuluman's report provides as follows:

19

The failure of all defendants to provide surgery to control the hemorrhage, continuing to administer pressor agents when contraindicated, failure to properly monitor intraoperative blood loss, and failure to recognize the compromised status of the patient during this process are proximate cause of the death of Alvarez. Had prompt surgery been performed, it is more likely than not that the injury would have been easily found and corrected, preventing further blood loss. I have performed such surgeries to locate and repair injury following vaginal hysterectomy and know from my experience the effectiveness of such procedures. Had ordinary care been provided during the operative and post operative period, in all medical probability, . . . Alvarez would be alive today.

Further, Brosseau's report specifically states that the failure to recognize Alvarez's deteriorating condition and the failure to get her to surgery were breaches of the standard of care by the hospital administration. Dr. Tyuluman's report implicates these same actions by the nurses and hospital staff, among others, as causing Alvarez's death. Therefore, we hold that Dr. Tyuluman's causation opinion sufficiently links the acts and omissions of North Hills identified by Brosseau to the cause of Alvarez's death.

Therefore, we further conclude and hold that the trial court did not abuse its discretion by finding that Dr. Tyuluman's report supplies the causation element of the statutory expert report requirement. We overrule North Hills's fourth issue. Having overruled all of North Hills's issues upon which it predicates its fifth issue—that the trial court should have granted its motion to dismiss with prejudice—we also overrule its fifth issue.

**Sanctions**

In their sole cross point, appellees contend that North Hills should be sanctioned for filing a frivolous appeal.  They argue that this appeal was filed with the sole purpose of delaying proceedings without any reasonable expectation that the appeal would succeed.

If the court of appeals determines that an appeal is frivolous, it may—on the motion of any party or on its own initiative, after notice and a reasonable opportunity for response—award each prevailing party just damages.  Tex. R. App. P. 45.  Whether to award damages is within the court's discretion, but sanctions should only be imposed in the most egregious circumstances.  *Durham v. Zarcades*, 270 S.W.3d 708, 720 (Tex. App.—Fort Worth 2008, no pet.).  In determining whether to award damages, the court must not consider any matter that does not appear in the record, briefs, or other papers filed in the court of appeals.  Tex. R. App. P. 45.  Although we have overruled all of North Hills's issues, we do not believe its appeal is so egregious that it warrants sanctions. *See Angelou v. African Overseas Union*, 33 S.W.3d 269, 282 (Tex. App.—Houston [14th Dist.] 2000, no pet.).  Therefore, we overrule appellees' sole cross point.

**Conclusion**

Having overruled all of North Hills's issues and appellees' cross point, we affirm the trial court's order.

                                    TERRIE LIVINGSTON
                                    CHIEF JUSTICE

PANEL:  LIVINGSTON, C.J.; GARDNER and WALKER, JJ.

DELIVERED:  September 27, 2012