

# COURT OF APPEALS
### SECOND DISTRICT OF TEXAS
### FORT WORTH

## NO. 02-15-00230-CV

PINNACLE HEALTH FACILITIES              APPELLANTS
OF TEXAS III, L.P. D/B/A KELLER
OAKS HEALTHCARE CENTER
AND KELLER OAKS HEALTHCARE
CENTER

V.

CRYSTAL STEELE AND ROBERT              APPELLEES
STEELE

----------

### FROM THE 96TH DISTRICT COURT OF TARRANT COUNTY
### TRIAL COURT NO. 096-273539-14

----------

## MEMORANDUM OPINION[1]

----------

Appellants Pinnacle Health Facilities of Texas III, L.P. d/b/a Keller Oaks

Healthcare Center and Keller Oaks Healthcare Center (collectively, Keller Oaks)

---

[1]*See* Tex. R. App. P. 47.4.

bring this interlocutory appeal[2] challenging the trial court's order denying their motion to dismiss under section 74.351 of the civil practice and remedies code. *See* Tex. Civ. Prac. & Rem. Code Ann. § 74.351 (West Supp. 2015). In a single issue, Keller Oaks claims the trial court abused its discretion by denying their motion to dismiss because Appellees Crystal Steele and Robert Steele (collectively, the Steeles) failed to serve an adequate expert report that constituted a good faith effort to comply with the statutory report requirements in section 74.351(r)(6). *See id.* § 74.351(r)(6). We affirm.

## Background

On June 13, 2013, eighty-seven year old Crystal Steele was admitted to Keller Oaks for acute rehabilitation. On July 9, 2013, she suffered a severe laceration to her right leg[3] while being transferred from a wheelchair into her bed. The Steeles alleged that "one of the bed rails was missing its top cap, causing a sharp edge to the bed rail to be dangerously exposed" or, alternatively, that "the wheelchair had an unsafe sharp edge."[4] Crystal's laceration was treated with

---

[2]*See* Tex. Civ. Prac. & Rem. Code Ann. § 51.014(a)(9) (West Supp. 2015).

[3]The laceration was ten centimeters by five centimeters and bled "copiously."

[4]Keller Oaks staff informed Crystal's family that the laceration was caused by a sharp edge on a bed rail that was the result of a missing plastic cap. According to records from the Keller Fire Department, which was called to Keller Oaks to attend to Crystal, the laceration was caused by a wheelchair.

sutures at Baylor Regional Medical Center at Grapevine. She returned to Keller Oaks and resided there until mid to late September 2013.

As a result of the laceration, Crystal became essentially wheelchair bound. On October 19, 2013, Crystal returned to Baylor Regional Medical Center at Grapevine and was diagnosed with and treated for deep vein thrombosis in her right leg. Crystal was hospitalized at Baylor Medical Center at Grapevine until October 28, 2013, and spent the rest of her life in and out of other nursing facilities and hospitals before passing away on April 9, 2015.

While Crystal was still living, the Steeles filed suit against Keller Oaks alleging that Keller Oaks had been negligent in failing to properly inspect and ensure that its equipment was safe and in failing to use reasonable care in transferring Crystal and that Keller Oaks's negligence caused the Steeles injury, including Crystal's past and future pain, physical impairment, mental anguish, and medical expenses and Robert's past and future loss of consortium. The Steeles timely served expert reports and curricula vitae by Dr. Bernard A. McGowen, M.D. and Lea Kayla Lee, R.N., to which Keller Oaks objected, contending that they failed to adequately set forth the applicable standard of care for transferring Crystal from her wheelchair to her bed and failed to establish a causal link between Crystal's injury and Keller Oaks's failure to maintain the wheelchair or the bed rail. After a hearing, the trial court denied Keller Oaks's motion to dismiss.

## Expert Report Requirements
## and Standard of Review

A health care liability claimant is required to serve defendants with an expert report and curriculum vitae of the report's author within 120 days of filing the claim. *Id.* § 74.351(a). The report must be written by an expert competent to give an opinion on the matters in the report, must inform the defendant of the specific conduct called into question, and must provide a basis for the trial court to determine that the claim has merit. *Id.* §§ 74.351(r)(5)(B), (r)(6), 74.402 (West 2011); *Bowie Mem'l Hosp. v. Wright*, 79 S.W.3d 48, 52 (Tex. 2002). If the defendant files a motion challenging the adequacy of the expert report, the court shall grant the motion only if it appears to the court that the report does not represent a good faith effort to comply with the statutory requirements. Tex. Civ. Prac. & Rem. Code Ann. § 74.351(*l*).

While the expert report "need not marshal all the plaintiff's proof," *Am. Transitional Care Ctrs. of Tex., Inc. v. Palacios*, 46 S.W.3d 873, 878 (Tex. 2001), it must provide a fair summary of the expert's opinions as to the "applicable standards of care, the manner in which the care rendered by the physician or health care provider failed to meet the standards, and the causal relationship between that failure and the injury, harm, or damages claimed." Tex. Civ. Prac. & Rem. Code Ann. § 74.351(r)(6). To qualify as a good faith effort to comply with these statutory requirements, the report must "discuss the standard of care, breach, and causation with sufficient specificity to inform the defendant of the

conduct the plaintiff has called into question and to provide a basis for the trial court to conclude that the claims have merit." *Palacios*, 46 S.W.3d at 875. A report does not fulfill this requirement if it merely states the expert's conclusions or if it omits any of the statutory requirements. *Id.* at 879. The information in the report "does not have to meet the same requirements as the evidence offered in a summary-judgment proceeding or at trial." *Id.* When reviewing the adequacy of a report, the only information relevant to the inquiry is the information contained within the four corners of the document. *Id.* at 878; *see Bowie Mem'l Hosp.*, 79 S.W.3d at 52.

"The report serves two functions. 'First, the report must inform the defendant of the specific conduct the plaintiff has called into question. Second, and equally important, the report must provide a basis for the trial court to conclude that the claims have merit.'" *Certified EMS v. Potts*, 392 S.W.3d 625, 630 (Tex. 2013) (quoting *Palacios*, 46 S.W.3d at 879). "A report need not cover every alleged liability theory to make the defendant aware of the conduct that is at issue." *Id.* "The expert report requirement is a threshold mechanism to dispose of claims lacking merit," and "[i]f a health care liability claim contains at least one viable liability theory, as evidenced by an expert report meeting the statutory requirements, the claim cannot be frivolous." *Id.* at 631.

We review a trial court's denial of a motion to dismiss for an abuse of discretion. *Jernigan v. Langley*, 195 S.W.3d 91, 93 (Tex. 2006); *Columbia N. Hills Hosp. Subsidiary, L.P. v. Alvarez*, 382 S.W.3d 619, 623–24 (Tex. App.—

5

Fort Worth 2012, no pet.).  A trial court abuses its discretion if the court acts without reference to any guiding rules or principles, that is, if the act is arbitrary or unreasonable.  *Low v. Henry*, 221 S.W.3d 609, 614 (Tex. 2007); *Cire v. Cummings*, 134 S.W.3d 835, 838–39 (Tex. 2004).

## Discussion

In their sole issue, Keller Oaks argues that the trial court abused its discretion by denying their motion to dismiss the Steeles' negligence claims because neither Dr. McGowen's nor Nurse Lee's report complied with section 74.351 because the reports (1) failed to adequately provide a fair summary of their opinions as to the applicable standard of care for transferring Crystal from her wheelchair to her bed and (2) failed to provide a causal relationship between Keller Oaks's purported breach of the standard of care with respect to Crystal's claimed injury and Keller Oaks's alleged failure to maintain the bed rail or the wheelchair.[5]  We address Keller Oaks's argument regarding standard of care first.

Pertinent to the applicable standard of care, Nurse Lee stated in her report:

the appropriate standard of care for Keller Oaks is to have staff perform transfers safely and reasonably.  When a staff member of Keller Oaks assists Ms. Steele in her transfer into bed, the staff

---

[5]The Steeles argue that Keller Oaks has failed to preserve any complaint regarding the Steeles' "improper equipment claim" because Keller Oaks's motion to dismiss did not address the Steeles' claim that Keller Oaks was negligent in failing to properly maintain their equipment.  We have examined Keller Oaks's motion, and we conclude that it addressed the Steeles' claim that Keller Oaks's equipment was not properly maintained.

6

should do so safely and in a manner that does not cause a laceration. In this case, that would include avoiding any object (including bed rails and or parts of the wheelchair) that can cause lacerations. The staff at Keller Oaks deviated from this appropriate standard of care by performing the transfer in such a way that it caused a serious laceration to Ms. Steele. This is true whether the laceration was caused by the wheelchair or by the bed.

Dr. McGowen stated in his report:

I have reviewed Ms. Lee's nursing report and she opines that the appropriate standard of care is for Keller Oaks staff to perform transfers from a wheelchair to a bed safely and reasonably. I agree that this is an appropriate standard of care. This includes completing the transfer without causing a laceration. This would further include avoiding any sharp objects that can inflict a laceration. Keller Oaks deviated from this standard of care by causing Ms. Steele to suffer a significant laceration during the transfer process. I agree with Ms. Lee, RN. I am also of the same opinions as to the standard of care and breach of the standard of care.

Relying on *Palacios*, Keller Oaks argues that neither Dr. McGowen nor Nurse Lee complained of any "specific conduct" or provided any "specific information about what the defendant should have done differently." 46 S.W.3d at 879, 880. In *Palacios*, Palacios suffered brain damage from an on-the-job accident. *Id.* at 875. While hospitalized, he fell from his bed, and his family claimed that the fall caused him to sustain further brain injury. *Id.* at 875–76. To establish the applicable standard of care, the Palacioses relied on one sentence in their expert report stating that, "Mr. Palacios had a habit of trying to undo his restraints and precautions to prevent his fall were not properly utilized." *Id.* at 879–80. The Palacioses argued that the inference could be made from that sentence, along with the expert's statement that "[i]t is unclear how [Mr. Palacios]

7

could untie all four of the restraints from the bed frame in under ten minutes," that their expert believed that hospital staff should have tied the restraints to the bed more securely. *Id.* at 880.

The supreme court held that the statement the Palacioses relied upon—that precautions to prevent Palacios from falling were not properly used—was not a good faith effort to provide a fair summary of the applicable standard of care because neither the trial court nor the health care provider would be able to determine if the expert believed that the standard of care required the health care provider "to have monitored Palacios more closely, restrained him more securely, or done something else entirely." *Id.* The supreme court stated that identifying the standard of care is critical because whether a defendant breached his or her duty to a patient cannot be determined absent specific information about what the defendant should have done differently. *Id.* When an expert report opines on the standard of care and how it was breached, it is not sufficient to simply state that the expert knows the standard of care and concludes that it was not met. *Id.* While a "fair summary" is something less than a full statement of the applicable standard of care and how it was breached, even a fair summary must set out what care was expected, but not given. *Id.*

In a case similar to this one, *Azle Manor, Inc. v. Vaden*, No. 2-08-115-CV, 2008 WL 4831408, at *6–7 (Tex. App.—Fort Worth Nov. 6, 2008, no pet.) (mem. op.), *disapproved of on other grounds by Certified EMS*, 392 S.W.3d at 628 n.5, 630–32, this court held that a nurse's expert report was sufficient as to the

8

standard of care.  In *Vaden*, Harold Vaden alleged that his wife, Joyce Vaden, a nursing home resident, slipped from a shower chair and fell, breaking several bones.  *Id.* at *1.  Harold further alleged that nursing home personnel did not discover Joyce's fractures until several days after the fall and that Joyce ultimately died from her injuries.  *Id.*

Emergency room records indicated that Joyce fell from a bedside commode, but nursing home records indicated that she fell from a shower chair. *Id.* at *3.  The nurse's expert report stated that the use of restraints would have "greatly reduced" Joyce's chances of falling from either a commode or a shower chair.  *Id.*  In holding that the report was not conclusory or speculative, this court concluded that the report satisfied "the two key requirements of an expert report identified by the supreme court in *Palacios* by (1) informing the Appellants of the specific conduct Vaden has called into question—namely, the failure of Appellants' staff to prevent Joyce's fall from the shower chair—and (2) providing a basis for the trial court to conclude the claims are meritorious."  *Id.* at *7 (citing *Palacios*, 46 S.W.3d at 875).

Unlike the expert report in *Palacios*, the expert reports in this case are not conclusory and do not require us to infer what each expert believes to be the applicable standard of care.  Like the expert report in *Vaden*, the reports in this case (1) contain sufficient information to inform Keller Oaks of the specific conduct the Steeles have called into question with respect to their claim that Keller Oaks was negligent in not using reasonable care when transferring Crystal

9

from her wheelchair to her bed, namely, Keller Oaks's failure to safely transfer Crystal from a wheelchair to a bed without laceration by avoiding any sharp objects that could cause a laceration and (2) provide a sufficient basis for the trial court to conclude that the claims are meritorious. *See id.* (citing *Palacios*, 46 S.W.3d at 875, 879). Therefore, the reports constitute a good faith effort to comply with the statutory requirements with respect to this theory of liability. *See Palacios*, 46 S.W.3d at 875, 879. Accordingly, we conclude and hold that the trial court did not abuse its discretion by denying Keller Oaks's motion to dismiss as to their complaint regarding Dr. McGowen's and Nurse Lee's alleged failure to state the applicable standard of care with respect to Keller Oaks's failure to use reasonable care when transferring Crystal from a wheelchair to a bed.

Because we have determined that the expert reports adequately addressed the standard of care with respect to the Steeles' claim that Keller Oaks was negligent by not using reasonable care when transferring Crystal from her wheelchair to her bed, we need not decide whether the expert reports adequately addressed causation as to the Steeles' claim that Keller Oaks was negligent in failing to inspect and maintain the wheelchair or the bed rail. *See Certified EMS*, 392 S.W.3d at 630–31 (concluding that expert report that satisfies statutory requirements as to one theory of liability entitles claimant to proceed with suit against physician or health care provider); *Harlingen Med. Ctr., L.P. v. Andrade*, Nos. 13-14-0700-CV, 13-15-0119-CV, 2016 WL 1613297, at *3–4 (Tex. App.—Corpus Christi Apr. 21, 2016, no pet. h.) (mem. op.) (applying *Certified*

10

*EMS* and declining to address alternative negligence theory of liability after holding that report was adequate as to one); *Mendez-Martinez v. Carmona*, No. 08-15-00265-CV, 2016 WL 1613422, at *7 n.1 (Tex. App.—El Paso Apr. 22, 2016, no pet. h.) (same); *Nexion Health at Garland, Inc. v. Townsend*, No. 05-15-00153-CV, 2015 WL 3646773, at *8 (Tex. App.—Dallas June 12, 2015, pet. denied) (mem. op.) (same); *see also* Tex. R. App. P. 47.1.

Accordingly, we overrule Keller Oaks's sole issue and affirm the trial court's order denying Keller Oaks's motion to dismiss.

/s/ Anne Gardner
ANNE GARDNER
JUSTICE

PANEL:  GARDNER, WALKER, and GABRIEL, JJ.

DELIVERED:  June 9, 2016