02-12-009-CV









 
 
 
 
 
 
 
 
 
 
 
 
 
 COURT OF APPEALS
 SECOND DISTRICT OF TEXAS
 FORT WORTH
  
 
 


 

 

NO. 02-12-00009-CV

 

 


 
 
 Columbia North Hills Hospital SubsIdiary, L.P.
 d/b/a North HIlls Hospital
 
 
  
 
 
 APPELLANT
 
 
 
 
  
 V.
  
 
 
 
 
 Bulmaro Alvarez, Individually and as Representative
 of the Estate of Sandra Alvarez, Deceased and as Next Friend of Saray Alvarez
 and Marilyn Alvarez, Minors, and Sandy Alvarez, Individually
 
 
  
 
 
 APPELLEES
 
 


 

 

----------

FROM THE 96th
District Court OF Tarrant COUNTY

----------

OPINION

----------

          Columbia
North Hills Hospital Subsidiary, L.P. d/b/a North Hills Hospital brings this
interlocutory appeal challenging the trial court’s denial of its motion to
dismiss under section 74.351 of the Civil Practice and Remedies Code.  See
Tex. Civ. Prac. & Rem. Code Ann. § 74.351 (West 2011).  In five issues, North
Hills contends that the trial court abused its discretion by (1) granting appellees—Bulmaro
Alvarez, individually and as representative of the estate of Sandra Alvarez,
deceased, and as next friend of Saray Alvarez and Marilyn Alvarez, minors, and
Sandy Alvarez, individually—a thirty-day extension to amend their expert
report, (2) finding appellees’ expert qualified to give an expert report, (3
& 4) finding the expert report sufficient to meet the statutory report
requirement, and (5) failing to dismiss appellees’ health care liability claim
with prejudice.  We affirm.

Background

          This
case is on appeal to this court for the second time.  See
Columbia N. Hills Hosp. Subsidiary, L.P. v. Alvarez,
No. 02-10-00342-CV, 2011 WL 3211239 (Tex. App.—Fort Worth July 28, 2011, no
pet.) (mem. op. on reh’g).  Forty-five-year-old Sandra Alvarez died at North
Hills after having a hysterectomy.  Id. at *1.  Following the surgery, she
was transferred to the recovery room where she experienced difficulties.  Id. 
She was eventually diagnosed as suffering from hemorrhagic shock and returned
to the operating room for surgical repair of the source of her internal
bleeding.  Id.  Alvarez died approximately five hours after her second
surgery.  Id.  Her autopsy report indicates that she died as a result of
“(1) complications of acute hemorrhagic shock due to post-operative bleed and
(2) morbid obesity with hepatomegaly, severe fatty metamorphosis and early
fibrosis.”  Id.

Appellees
sued North Hills alleging both vicarious liability and direct liability
theories of recovery.  Id. at *2.  Appellees alleged that North Hills
was vicariously liable for its nurses’ negligence, including the failure to
invoke the chain of command.  Id.  Appellees further alleged that North
Hills was directly liable for failing to adequately train its nurses, failing
to enforce its policies and procedures, and failing to adequately supervise its
nurses.  Id.  Appellees timely served the report and curriculum vitae of
their designated expert, Dr. Tyuluman, on North Hills.  Id.  North Hills
filed a motion to dismiss alleging that Dr. Tyuluman was not qualified to
testify on the standard of care applicable to a hospital and also alleging
various deficiencies in his report.  Id.  After a hearing, the trial
court ruled that

the expert reports
submitted by [Appellees] constitute a good faith effort and meet the
requirements of Chapter 74 of the Civil Practice & Remedies Code, with the
exception that [Appellees] are required to submit an amended report breaking
out specifically by name each defendant and/or group of defendants and the
specific elements relating to the standard of care, breach of the standard of
care, and causation for each defendant.

 

Id.

 

The
trial court gave appellees thirty days to file the amended report.  Appellees
timely served an amended report of Dr. Tyuluman.[1]  Id.  North Hills
then filed a second motion to dismiss again alleging that Dr. Tyuluman was not
qualified and alleging the same deficiencies in his report.  Id.  After
a hearing, the trial court denied North Hills’s second motion to dismiss, and
North Hills appealed to this court.  Id.

We
held in our first opinion that Dr. Tyuluman was not qualified to give an
opinion on the standard of care for the direct liability claims against North
Hills and that his statement of the standard of care applicable to the hospital
for the direct liability claims was insufficient to meet the statutory
requirement.  Id. at *5.  Because the trial court had not granted appellees
a thirty-day extension to cure the deficiencies we identified, we remanded so
that the trial court could determine whether an extension should be granted to
cure those deficiencies.  Id. at *7.  We affirmed the trial court’s
denial of the motion to dismiss on the vicarious liability claims against North
Hills.  Id. at *8.

On
remand, the trial court granted appellees a thirty-day extension to cure the
deficiencies.  Appellees filed a new report from Charles M. Brosseau, Jr., a
hospital management consultant.  North Hills objected to the new report and filed
a motion to dismiss, arguing that appellees were not allowed to submit a new
report and also alleging various deficiencies with the new report.  After
holding a hearing, the trial court overruled North Hills’s objections and
denied its motion to dismiss.  North Hills then perfected this second
interlocutory appeal.

Standard of Review

We review a trial court’s denial of a motion
to dismiss for an abuse of discretion.  Jernigan v. Langley, 195 S.W.3d
91, 93 (Tex. 2006); Ctr. for Neurological Disorders, P.A. v. George, 261
S.W.3d 285, 290–91 (Tex. App.—Fort Worth 2008, pet. denied); Maris v.
Hendricks, 262 S.W.3d 379, 383 (Tex. App.—Fort Worth 2008, pet. denied).  To
determine whether a trial court abused its discretion, we must decide whether
the trial court acted without reference to any guiding rules or principles; in
other words, we must decide whether the act was arbitrary or unreasonable.  Downer
v. Aquamarine Operators, Inc., 701 S.W.2d 238, 241–42 (Tex. 1985), cert.
denied, 476 U.S. 1159 (1986).  Merely because a trial court may decide a
matter within its discretion in a different manner than an appellate court
would in a similar circumstance does not demonstrate that an abuse of
discretion has occurred.  Id. at 242.  But a trial court has no
discretion in determining what the law is or in applying the law to the facts;
thus, “a clear failure by the trial court to analyze or apply the law correctly
will constitute an abuse of discretion.”  Walker v. Packer, 827 S.W.2d
833, 840 (Tex. 1992) (orig. proceeding); Ehrlich v. Miles, 144 S.W.3d
620, 624 (Tex. App.—Fort Worth 2004, pet. denied).

Thirty-Day
Extension

           In
its first issue, North Hills contends that the trial court erred in granting appellees
a thirty-day extension to correct the deficiencies in Dr. Tyuluman’s report
upon remand.  North Hills argues that our holding in its previous appeal prohibited
appellees from submitting a new report on the standard of care and breach and
required them to amend Dr. Tyuluman’s report to show his qualifications to
opine on the standard of care applicable to the direct liability claims.  According
to North Hills, since appellees’ motion for an extension showed only that they
intended to submit a new report from a different expert, the trial court should
not have granted the request for an extension and should not have considered
the new report from Brosseau.

          To
the extent that North Hills argues that the trial court abused its discretion
in granting the thirty-day extension, the trial court’s ruling is not subject
to appellate review.  See Ogletree v. Matthews, 262 S.W.3d 316, 321
(Tex. 2007).

          The
remainder of North Hills’s argument in this issue is that the trial court erred
in considering Brosseau’s report in satisfaction of the statutory requirements.
 North Hills argues that because appellees had already received one extension
to correct Dr. Tyuluman’s statement of the standard of care, the extension after
remand gave appellees two extensions in disregard of section 74.351(c), which allows
for only one extension.  See Tex. Civ. Prac. & Rem. Code Ann. §
74.351(c).

A
health care liability claimant is required to serve defendants with an expert
report and curriculum vitae of the report’s author within one hundred and
twenty days of filing the claim.  Id. § 74.351(a).  The report must be
written by an expert competent to give an opinion on the matters in the report,
must inform the defendant of the specific conduct called into question, and must
provide a basis for the trial court to determine that the claim has merit.  Id.
§ 74.351(r)(5)(B), (r)(6), 74.402 (West 2011); Bowie Mem’l Hosp. v. Wright,
79 S.W.3d 48, 52 (Tex. 2002).  If the defendant files a motion challenging the
adequacy of the expert report, the court shall grant the motion only if it
appears to the court that the report does not represent a good faith effort to
comply with the statutory requirements.  Tex. Civ. Prac. & Rem. Code Ann. §
74.351(l).  The court may also grant “one 30-day extension to the claimant
in order to cure the deficiency.”  Id. § 74.351(c).  When curing a deficiency
in a report, a plaintiff may submit an amended report from the same expert or supplement
the original report with a new report from a different expert.  Lewis v.
Funderburk, 253 S.W.3d 204, 208 (Tex. 2008).

If a
trial court finds that an expert report does not meet the statutory
requirement, grants the plaintiff a thirty-day extension to correct the
deficiency, and finds the report sufficient after the extension––and we
subsequently reverse the trial court’s decision–––we may allow the trial court
to grant another thirty-day extension on remand if we hold that the report is
deficient in a different manner than found by the trial court when granting the
original thirty-day extension.  See TTHR Ltd. P’ship v. Moreno,
No. 02-10-00334-CV, 2011 WL 2651813, at *5 (Tex. App.—Fort Worth July 7, 2011, pet.
granted) (mem. op. on reh’g); see also Columbia N. Hills Hosp. Subsidiary,
2011 WL 3211239, at *7 (applying Moreno).  This is not a second
extension in violation of section 74.351(c); rather it is the extension the
plaintiff could have received had the trial court given him notice about this
defect after the defendant’s first objection that the report was deficient.  See
TTHR Ltd. P’ship, 2011 WL 2681813, at *5.

In
the first appeal, we remanded the case to the trial court for it to determine
whether to grant a thirty-day extension to allow appellees to correct the
deficiencies this court identified, which were that the report did not show
that Dr. Tyuluman was qualified to opine on the standard of care as it applied
to the direct liability claims and that his statement of the standard of care
applicable to North Hills on the direct liability claims was insufficient.  Columbia
N. Hills Hosp. Subsidiary, 2011 WL 3211239, at *5, *7.  Despite North
Hills’s argument that the trial court had already granted an extension to cure
the statement of the standard of care, the deficiencies we identified on appeal
are different from those originally found by the trial court.  In giving the
original thirty-day extension, the trial court had instructed appellees to
“break[] out specifically by name each defendant and/or group of defendants and
the specific elements relating to the standard of care, breach of the standard
of care, and causation for each defendant.”  Id. at *2.  Thus,
the trial court granted the original extension to make separate statements of
each standard of care, breach, and causation for each defendant rather than
directing appellees to make a different statement of the standard of care for each
claim against North Hills.  Nor did the trial court address Dr. Tyuluman’s
qualifications to make such statements relating to the direct liability claims
against North Hills.  Therefore, we conclude and hold that the trial court was
authorized to consider Brosseau’s report addressing both the qualifications of
the expert and the statement of the standard of care for the direct
claims against North Hills because those elements were found to be deficient
for the first time in the first appeal.  See Tex. Civ. Prac. & Rem.
Code Ann. § 74.351(i); Leland v. Brandal, 257 S.W.3d 204, 207 (Tex.
2008) (“The statute does not allow for an extension unless, and until, elements
of a report are found deficient, and that did not occur in this case until the
court of appeals so held.”); Lewis, 253 S.W.3d at 208; Columbia N.
Hills Hosp. Subsidiary, 2011 WL 3211239, at *7.

We
overrule North Hills’s first issue.

Brosseau’s
Qualifications

          In
its second issue, North Hills contends that the trial court abused its
discretion in finding Brosseau qualified to give an expert opinion on the direct
liability claims.  North Hills argues that (1) Brosseau is not qualified to
give an opinion on post-operative nursing care because he is not a trained, educated
nurse and must rely on the opinions of others to determine whether the care of
nurses fell below the standard of care and (2) he is not qualified to opine on
causation because he is not a physician.

An
expert report concerning standards of care for health care providers must be
authored by one who qualifies as an expert.  Tex. Civ. Prac. & Rem. Code
Ann. §§ 74.351(r)(5)(B), 74.402; Davisson v. Nicholson, 310 S.W.3d 543,
550 (Tex. App.—Fort Worth 2010, no pet.) (op. on reh’g).  A person may qualify
as an expert on the issue of whether a health care provider departed from
accepted standards of care only if the person

(1) is practicing
health care in a field of practice that involves the same type of care or
treatment as that delivered by the defendant health care provider, if the
defendant health care provider is an individual, at the time the testimony is
given or was practicing that type of health care at the time the claim arose;

 

(2) has knowledge of
accepted standards of care for health care providers for the diagnosis, care,
or treatment of the illness, injury, or condition involved in the claim; and

 

(3) is qualified on
the basis of training or experience to offer an expert opinion regarding those
accepted standards of health care.

 

Tex.
Civ. Prac. & Rem. Code Ann. § 74.402(b).  Persons practicing health care
include those serving as consultants while being licensed, certified, or
registered in the same field as the health care provider.  Id. §
74.402(a)(2). A person is qualified on the basis of training or experience if
he is certified by a state or national professional certifying agency or has
substantial experience in the field and is actively practicing health care
services relevant to the claim.  Id. § 74.402(c).  To
determine whether the author of a report is qualified, we may look only at the
four corners of the report and the author’s curriculum vitae.  Barber v.
Mercer, 303 S.W.3d 786, 794 (Tex. App.—Fort Worth 2009, no pet.) (citing Am.
Transitional Care Ctrs. of Tex., Inc. v. Palacios, 46 S.W.3d 873, 878 (Tex.
2001)).

          The
direct liability claims against North Hills allege that the hospital is
directly liable for failing to adequately train its nurses, enforce its
policies and procedures, and adequately supervise its nurses.  Therefore, an expert
making a report as to the standard of care involved in such a claim must have
adequate familiarity, training, or experience with formulation of training
programs, formulation or enforcement of hospital policies and procedures, and
supervision of nurses to be qualified to make such a report.  See Columbia N.
Hills Hosp. Subsidiary, 2011 WL 3211239, at *5; see also Reed v.
Granbury Hosp. Corp., 117 S.W.3d 404, 409–13 (Tex. App.—Fort Worth 2003, no
pet.) (holding that expert must have knowledge of hospital policies and
procedures for direct liability claim against hospital); Hendrick Med. Ctr.
v. Conger, 298 S.W.3d 784, 788 (Tex. App.—Eastland 2009, no pet.) (holding
that expert must have knowledge, training, or experience concerning standard of
care in formulation of hospital policies and procedures for report on direct
liability claim).

Looking
at the four corners of the report and curriculum vitae, we conclude that they
establish that Brosseau is qualified to opine as to the standard of care
applicable to North Hills.  According to the report, Brosseau has been a
hospital management consultant since 1996 and has been certified as a Fellow of
the American College of Healthcare Executives since 2001.  He has a Masters
degree in Healthcare Administration and has been working as a hospital
administrator or administration consultant for over thirty years.  In that
time, Brosseau has been responsible for the “preparation and implementation of
hospital policies and procedures, including but not limited to, policies and
procedures regarding environment of care, treatments, training/competencies,
nursing, chain of command, human resources and leadership.”  He states that because
of his knowledge, training, and experience, he is familiar with the standard of
care applicable to the administrative and managerial duties that hospitals owe their
patients.

The
qualifications listed in Brosseau’s report are sufficient to qualify him as an
expert under section 74.402 because he has shown that he is a practicing health
care provider with the proper education, certifications, and experience to
qualify as an expert in hospital administration under the statute.  See Tex.
Civ. Prac. & Rem. Code Ann. § 74.402(b); Hollingsworth v. Springs,
353 S.W.3d 506, 516–18 (Tex. App.—Dallas 2011, no pet.) (holding that Brosseau
is qualified to opine on standard of care applicable to hospital administration).

North
Hills argues that Brosseau is not qualified to opine on the standard of care
because he is not a nurse or physician and therefore must rely on the opinions
of others when determining whether direct patient care was deficient.  However,
such expertise is not required for this particular claim.  We held in our prior
opinion in this case that Dr. Tyuluman had such expertise on matters of the medical
care of nurses and could opine on the standard of care as it applied to direct
nursing care for the vicarious liability claims against the hospital but that
he was not qualified to opine on the direct liability claims.  See Columbia
N. Hills Hosp. Subsidiary, 2011 WL 3211239, at *4–5.  For these direct
liability claims, the expert needed to demonstrate expertise in “the standard
of care applicable to a hospital in training its nurses, in enforcing its
policies and procedures, and in supervising its nurses, which is an entirely
separate standard.”  Id. at *5 (citing Denton Reg’l Med. Ctr. v.
LaCroix, 947 S.W.2d 941, 950–51 (Tex. App.—Fort Worth 1997, pet. denied),
for the general discussion of the standard of care for direct hospital
liability).  Thus, Brosseau has shown the kind of expertise required for the
direct liability claims.

To
the extent that medical expert testimony is required to address the underlying
medical procedures and nursing care at issue, Dr. Tyuluman’s report may be
taken together with Brosseau’s to address how the underlying nursing care
relates to the alleged failures of administrative care.  See Tex. Civ.
Prac. & Rem. Code Ann. § 74.351(i) (any report requirement can be satisfied
by offering more than one report); Columbia N. Hills Hosp. Subsidiary,
2011 WL 3211239, at *4–5 (holding Dr. Tyuluman’s report adequate as to the
underlying medical care); Reed, 117 S.W.3d at 409 (holding medical
expert testimony necessary to explain underlying medical procedures).  Because
the direct liability claims are about the failure in North Hills’s administrative
care, Brosseau does not need to be a nurse or physician to qualify as an expert
for the direct liability claims; rather, he needs to be an experienced hospital
administrator.  See Hollingsworth, 353 S.W.3d at 516.  Thus, the trial
court did not abuse its discretion in finding Brosseau qualified to make an
expert report on the standard of care for the direct liability claims against
North Hills.

In
the remainder of its second issue, North Hills contends that Brosseau is not
qualified to opine on how the actions of North Hills caused Alvarez’s death
because he is not a physician.  North Hills is correct in that only a physician
can give an opinion on causation in an expert report.  Tex. Civ. Prac. &
Rem. Code Ann. § 74.351(r)(5)(C).  However, as we explain below, Brosseau did
not offer an opinion on causation, nor was it necessary for him to do so.

Therefore,
we overrule North Hills’s second issue.

Brosseau’s
Expert Report

In its
third and fourth issues, North Hills contends that the trial court abused its
discretion in finding Brosseau’s report sufficient to meet the statutory
requirements of chapter 74 of the Civil Practice and Remedies Code.  North
Hills argues that the report does not adequately set forth the standard of
care, does not show how North Hills breached the standard of care, and does not
show how North Hills caused Alvarez’s death because it is too conclusory.

Applicable
Law

The
purpose of the expert report requirement is to inform the defendant of the
specific conduct the plaintiff has called into question and to provide a basis
for the trial court to conclude that the claims have merit.  Palacios, 46
S.W.3d at 878.  A report that merely states the expert’s conclusions about the
standard of care, breach, and causation does not fulfill these purposes.  Id.
at 879.  Rather, the expert must explain the basis of his statements to link
his conclusions to the facts.  Bowie Mem’l Hosp., 79 S.W.3d at 52.  An
expert report “need not marshal all the plaintiff’s proof,” and the information
in the report “does not have to meet the same requirements as the evidence
offered in a summary-judgment proceeding or at trial.”  Palacios, 46
S.W.3d at 878–79.  A plaintiff may meet the requirements of
chapter 74 through multiple reports.  Tex. Civ. Prac. & Rem. Code Ann. §
74.351(i).  A single report need not “address all liability and causation
issues with respect to all physicians or health care providers or with respect
to both liability and causation issues for a physician or health care
provider.”  Id.  But read together, the reports must provide a “fair
summary” of the experts’ opinions regarding the “applicable standards of care,
the manner in which the care rendered by the physician or health care provider
failed to meet the standards, and the causal relationship between that failure
and the injury, harm, or damages claimed.”  Id. § 74.351(r)(6); Barber,
303 S.W.3d at 791. 

If
the defendant files a motion challenging the adequacy of the expert report, the
court shall grant the motion “only if it appears to the court, after hearing,
that the report does not represent an objective good faith effort to comply
with the definition of an expert report.”  Tex. Civ. Prac. & Rem. Code Ann.
§ 74.351(l).  In reviewing the sufficiency of the reports, we look no
further than the information contained in the reports themselves.  Bowie
Mem’l Hosp., 79 S.W.3d at 52.

Standard
of Care and Breach

          The
standard of care for a hospital is what an ordinary, prudent hospital would do
under the same or similar circumstances.  Palacios, 46 S.W.3d at 880.
Identifying the standard of care is critical: whether a defendant breached his
or her duty to a patient cannot be determined absent specific information about
what the defendant should have done differently.  Id.  When an expert
report opines on the standard of care and how it was breached, it is not
sufficient to simply state that the expert knows the standard of care and
concludes that it was not met.  Id.  While a “fair summary” is something
less than a full statement of the applicable standard of care and how it was
breached, even a fair summary must set out what care was expected, but not
given.  Id.

          Looking
at the four corners of the reports, we conclude that Brosseau’s report
adequately states the standard of care applicable to the hospital and how the
hospital breached that standard.  Brosseau states that the standard of care
requires hospital administration to ensure that its employees are competent, to
have and enforce policies and procedures, and to ensure that those policies are
being implemented.  Specifically, Brosseau states that hospitals must train
their nurses to be competent and to understand the hospitals’ policies and
procedures.  This includes training nurses to (1) make appropriate assessments
and reassessments of patients, (2) develop appropriate nursing plans of care,
and (3) become effective patient advocates by using the hospital’s chain of
command to keep a patient from harm.  The standard of care, according to
Brosseau, also includes requiring hospital management and administration to
formulate and enforce policies to facilitate this training and to ensure nurse
competency.  Brosseau states that a hospital must have policies regarding the
chain of command that can “be emergently and immediately invoked to involve
hospital management to ensure safe resolution of the patient’s condition” and that
resolution “must include not only nursing management, but also the Medical
Department Chair and/or the Chief of Staff.”

Relying
on Dr. Tyuluman’s opinion that surgery was the only proper treatment to stop
internal bleeding, Brosseau concluded that the standard of care dictated that
the nurses, nurse management, and administrators use a plan of care and the chain
of command to get surgeons, the Chief of Staff, or the Department Chair
involved to help get Alvarez to surgery quickly.  Brosseau opined that the
standard of care was breached because North Hills did not ensure that its
nurses were competent to care for Alvarez and the required policies and
procedures for nursing administration were either not in place or not enforced.
 He concluded that the failure to ensure competency was evidenced by Dr.
Tyuluman’s findings that the nurses failed to appreciate Alvarez’s
deteriorating condition and failed to invoke the chain of command to get her
the care she needed.  Brosseau further concluded that the failure to have,
implement, and enforce policies on patient assessment and advocacy was evidenced
by the failure of nurses, nurse managers, and administrators to implement a
plan of care to get Alvarez to surgery when her condition deteriorated as well
as by the belated involvement of the Assistant CNO and Nurse Manager and the lack
of involvement of the Department Chair and Chief of Staff in Alvarez’s care.

We
hold that Brosseau’s report, taken together with Dr. Tyuluman’s assessment of
the medical care involved, sufficiently ties his conclusions to facts to put
the hospital on notice of what care he opined was required but not given.  See
Palacios, 46 S.W.3d at 879; Hollingsworth, 353 S.W.3d at
517–18 (holding similar statements by Brosseau to be sufficient to show
standard of care and breach).  Therefore, we overrule North Hills’s third
issue.

Causation

          In
its fourth issue, North Hills contends that Brosseau’s report did not provide a
fair summary of how its conduct caused Alvarez’s death.  Appellees concede that
Brosseau’s report is not being proffered as an expert opinion on causation but instead
argue that Dr. Tyuluman’s report is sufficient on the issue of causation.

          When
a plaintiff relies on one report to show the standard of care and breach and a
second report to show causation, we must look to both reports to see whether
the breach identified in the standard-of-care report is sufficiently linked to
the cause of the alleged injury in the causation report.  See Salais v. Tex.
Dep’t of Aging & Disability Servs., 323 S.W.3d 527, 536 (Tex. App.—Waco
2010, pet. denied) (holding when paramedic expert report offered only for
standard of care and breach, court examines whether physician’s report
adequately links breach to alleged injury); Martin v. Abilene Reg’l Med. Ctr.,
No. 11-04-00303-CV, 2006 WL 241509, at *4–5 (Tex. App.—Eastland Feb. 2, 2006,
no pet.) (mem. op.) (holding report of nurse expert on standard of care and
breach sufficiently linked to physician expert report on causation to satisfy
report requirement); cf. Gannon v. Wyche, 321 S.W.3d 881, 894–97
(Tex. App—Houston [14th Dist.] 2010, pet. denied) (holding physician’s report
on causation not sufficiently linked to nurse expert report on standard of care
and breach when statement of causation specifically referred to physicians only).

North
Hills’s argument that the Brosseau report’s statement of causation is conclusory
is based upon the assumption that we cannot consider Dr. Tyuluman’s report because
we have already ruled it to be “inadequate as it pertains to the direct
liability claims against North Hills.”  However, North Hills misconstrues our
holding.  We held only that Dr. Tyuluman was not qualified to opine on the
standard of care as it related to the direct liability claims against North
Hills, expressly declining to examine the adequacy of his statement of
causation with respect to the direct liability claims.  Columbia N. Hills
Hosp. Subsidiary, 2011 WL 3211239, at *5 n.4.  Further, a physician does
not need to be qualified to opine on the standard of care for a direct
liability claim to be qualified to opine on causation; a physician needs only
to show how he is qualified to opine on the cause of the plaintiff’s injury.  See
Salais, 323 S.W.3d at 535–36 (holding separate physician report on
causation must show qualification to opine on causation when report on
paramedic standard of care and breach found to be sufficient).  Accordingly,
our only inquiry is whether Dr. Tyuluman’s report adequately links the injury
to the breaches identified by Brosseau.  See Salais, 323 S.W.3d at 536; Martin,
2006 WL 241509, at *4–5.

          Dr.
Tyuluman’s report provides as follows:

          The failure
of all defendants to provide surgery to control the hemorrhage, continuing to
administer pressor agents when contraindicated, failure to properly monitor
intraoperative blood loss, and failure to recognize the compromised status of
the patient during this process are proximate cause of the death of Alvarez.  Had
prompt surgery been performed, it is more likely than not that the injury would
have been easily found and corrected, preventing further blood loss.  I have
performed such surgeries to locate and repair injury following vaginal
hysterectomy and know from my experience the effectiveness of such procedures.  Had
ordinary care been provided during the operative and post operative period, in
all medical probability, . . . Alvarez would be alive today.

 

Further,
Brosseau’s report specifically states that the failure to recognize Alvarez’s deteriorating
condition and the failure to get her to surgery were breaches of the standard
of care by the hospital administration.  Dr. Tyuluman’s report implicates these
same actions by the nurses and hospital staff, among others, as causing Alvarez’s
death.  Therefore, we hold that Dr. Tyuluman’s causation opinion sufficiently links
the acts and omissions of North Hills identified by Brosseau to the cause of
Alvarez’s death.

          Therefore,
we further conclude and hold that the trial court did not abuse its discretion by
finding that Dr. Tyuluman’s report supplies the causation element of the
statutory expert report requirement.  We overrule North Hills’s fourth issue. 
Having overruled all of North Hills’s issues upon which it predicates its fifth
issue––that the trial court should have granted its motion to dismiss with
prejudice––we also overrule its fifth issue.

Sanctions

In their sole cross point, appellees contend
that North Hills should be sanctioned for filing a frivolous appeal.  They
argue that this appeal was filed with the sole purpose of delaying proceedings
without any reasonable expectation that the appeal would succeed.

          If
the court of appeals determines that an appeal is frivolous, it may—on the motion
of any party or on its own initiative, after notice and a reasonable
opportunity for response—award each prevailing party just damages.  Tex. R.
App. P. 45.  Whether to award damages is within the court’s discretion, but
sanctions should only be imposed in the most egregious circumstances.  Durham
v. Zarcades, 270 S.W.3d 708, 720 (Tex. App.—Fort Worth 2008, no pet.).  In
determining whether to award damages, the court must not consider any matter
that does not appear in the record, briefs, or other papers filed in the court
of appeals.  Tex. R. App. P. 45.  Although we have overruled all of North Hills’s
issues, we do not believe its appeal is so egregious that it warrants
sanctions.  See Angelou v. African Overseas Union, 33 S.W.3d 269, 282
(Tex. App.—Houston [14th Dist.] 2000, no pet.).  Therefore, we overrule appellees’
sole cross point.

Conclusion

          Having
overruled all of North Hills’s issues and appellees’ cross point, we affirm the
trial court’s order.

 

 

 

TERRIE LIVINGSTON
CHIEF JUSTICE

 

PANEL:  LIVINGSTON, C.J.; GARDNER and WALKER, JJ.

 

DELIVERED: 
September 27, 2012








 



 


 
 
 
 
 
 
 
 
 
 
 
 
 
 COURT OF APPEALS
 SECOND DISTRICT OF TEXAS
 FORT WORTH
  
 
 


 

NO. 02-12-00009-CV

 


 
 
 Columbia
 North Hills Hospital Subsidiary, L.P. d/b/a North Hills Hospital
  
 v.
  
  
 Bulmaro
 Alvarez, Individually and as Representative of the Estate of Sandra Alvarez,
 Deceased and as Next Friend of Saray Alvarez and Marilyn Alvarez, Minors, and
 Sandy Alvarez, Individually
 
 
 §
  
  
  
 §
  
  
  
 §
  
  
  
 §
 
 
 From the 96th District Court
  
  
  
 of
 Tarrant County (96-241823-09)
  
  
  
 September
 27, 2012
  
  
  
 Opinion
 by Chief Justice Livingston
 
 


 

JUDGMENT

 

          This
court has considered the record on appeal in this case and holds that there was
no error in the trial court’s judgment.  It is ordered that the judgment of the
trial court is affirmed. 

It
is further ordered that appellant Columbia North Hills Hospital Subsidiary,
L.P. shall pay all of the costs of this appeal, for which let execution issue.

 

SECOND DISTRICT COURT OF APPEALS 

 

 

 

By_________________________________

   
Chief Justice Terrie Livingston

 









[1]All subsequent references
to Dr. Tyuluman’s report are to his amended report.