**Opinion issued April 21, 2020**



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-19-00483-CV

———————————

**THOMAS KEVIN COOK, M.D. AND THE CRANIOFACIAL AND PLASTIC SURGERY CENTER- HOUSTON, QIJUN SONG, C.S.A.,** Appellants

**V.**

**KATHLEEN BROUSSARD,** Appellee

---

**On Appeal from the 164th District Court**
**Harris County, Texas**
**Trial Court Case No. 2016-52406**

---

## MEMORANDUM OPINION

This is an interlocutory appeal from the trial court's denial of a Chapter 74

motion to dismiss filed by appellants Thomas Kevin Cook, M.D., Craniofacial and

Plastic Surgery Center—Houston, and Qijun Song, C.S.A.[1] *See* TEX. CIV. PRAC. & REM. CODE § 74.351. In the trial court, they argued that appellee Kathleen Broussard's expert reports did not constitute a good faith effort to comply with the statutory requirements to summarize the applicable standard of care, the breach of that standard, and the way in which the breach caused the alleged injury. Song argued that the reports by Dr. Peter R. Kastl and Dr. Wellington Davis III failed to establish their expertise on the standards of care for surgical assistants, and all the appellants argued that the reports were conclusory as to causation. The trial court overruled the defendants' objections and denied the motions to dismiss.

On appeal, the appellants contend that the trial court abused its discretion by granting Broussard a second 30-day extension to file a compliant expert report and by denying their motions to dismiss. We affirm.

**Background**

Karen Broussard fell and fractured a bone in her eye socket. She underwent surgery to repair the fracture. Dr. Cook was the surgeon, and Song was the certified surgical assistant. During the procedure, she suffered a laceration to right lower eyelid, which significantly affected her tear duct system and necessitated two subsequent surgeries.

---

[1] We refer to Dr. Cook and the Craniofacial and Plastic Surgery Center—Houston collectively as "Dr. Cook."

2

Broussard sued the appellants and, in accordance with the Texas Medical Liability Act (TMLA),[2] she timely served an expert report from Dr. Peter Kastl, an ophthalmologist. The appellants challenged the adequacy of the report as to his qualifications as an expert, the standard of care, breach, and causation. The trial court granted a 30-day extension to cure the report, and Broussard served a supplemental report from Dr. Kastl. After the trial court denied the appellants' motion to dismiss, they filed an interlocutory appeal in this court. *See Cook v. Broussard*, No. 01-17-00943-CV, 2018 WL 3384638, at *1 (Tex. App.—Houston [1st Dist.] July 12, 2018, no pet.) (mem. op.).

On appeal, we held that Dr. Kastl's report failed to show how he, an ophthalmologist, was qualified to opine on the standard of care for a plastic surgeon and plastic surgeon's certified surgical assistant performing surgery on a fractured facial bone. *See id.* We reversed the trial court's denial of the motions to dismiss. *See id.* We noted that the Texas Supreme Court had previously held that an expert's failure to show how he is qualified to offer an opinion in an expert report is the kind of deficiency for which the plaintiff should have an opportunity to cure. *See id.* at *7 (citing *Scoresby v. Santillan*, 346 S.W.3d 546, 554 (Tex. 2011), and *Mangin v. Wendt*, 480 S.W.3d 701, 706 (Tex. App.—Houston [1st Dist.] 2018, no pet.)). We relied on *Columbia N. Hills Hospital Subsidiary, L.P. v.*

---

[2]     *See* TEX. CIV. PRAC. & REM. CODE §§ 74.001–.507.

*Alvarez*, 382 S.W.3d 619, 624–25 (Tex. App.—Fort Worth 2012, no pet.), for the proposition that the trial court may be permitted to "grant another thirty-day extension on remand if we hold that the report is deficient in a different manner than found by the trial court when granting the original thirty-day extension." Thus, we remanded the case to the trial court for further proceedings. The appellants did not file a motion for rehearing.

On remand, the trial court granted Broussard a second 30-day extension, and she served supplemental expert reports from Dr. Kastl and Dr. Wellington J. Davis, M.D. Dr. Kastl's second supplemental expert report explained that he had training, education, and experience regarding the surgery that Dr. Cook performed on Broussard, which was a continuing part of his clinical practice. Dr. Davis, who is board certified in surgery and plastic surgery, stated that the operative injury was not a typical risk of the surgery being conducted. He opined that although the operative report was unclear about whether Dr. Cook or Song caused the injury, loss of control of surgical instrumentation by either was a deviation from the standard of care and the cause of Broussard's injury.

The appellants objected to the newly filed expert reports and filed motions to dismiss. The trial court denied the motions, and the appellants filed this second interlocutory appeal.

**Analysis**

On appeal, Dr. Cook and Song challenge (1) the trial court's grant of a second 30-day extension of time for Broussard to cure the deficiencies in the expert reports and (2) the trial court's denial of the motion to dismiss.

## I. A plaintiff must make a good-faith effort to comply with the expert-report requirement in a health care liability case.

To enable the trial court to "weed out frivolous malpractice claims in the early stages of litigation," a plaintiff alleging a health-care-liability claim must serve an expert report upon each defendant not later than 120 days after that defendant's answer is filed. *Abshire v. Christus Health Se. Tex.*, 563 S.W.3d 219, 223–24 (Tex. 2018); *see* TEX. CIV. PRAC. & REM. CODE § 74.351(a)); *Loaisiga v. Cerda*, 379 S.W.3d 248, 258 (Tex. 2012) ("The requirements are meant to identify frivolous claims and reduce the expense and time to dispose of any that are filed."). The expert report must provide "a fair summary" of the expert's opinions "as of the date of the report" regarding (1) the defendant's "applicable standards of care," (2) how the defendant breached the standard, and (3) the "causal relationship" between the breach of the standard of care and the alleged injury. TEX. CIV. PRAC. & REM. CODE § 74.351(r)(6). "[O]ne expert need not address the standard of care, breach, and causation; multiple expert reports may be read together to determine whether these requirements have been met." *Abshire*, 563 S.W.3d at 224 (citing TEX. CIV. PRAC. & REM. CODE § 74.351(i)).

5

Because the TMLA enables early dismissal of frivolous lawsuits, a plaintiff need not marshal all her proof; a report will be considered adequate when it constitutes a "good faith effort to comply with the statutory requirements." *Id.* § 74.351(*l*); *see Abshire*, 563 S.W.3d at 223 (citing *Am. Transitional Care Ctrs. of Tex. v. Palacios*, 46 S.W.3d 873, 878 (Tex. 2001)). A report constitutes a "good faith effort" to comply when it (1) informs the defendant of the specific conduct complained of, and (2) provides the trial court a basis on which to conclude the claims have merit. *Abshire*, 563 S.W.3d at 223; *Baty v. Futrell*, 543 S.W.3d 689, 693–94 (Tex. 2018). However, a "conclusory statement of causation is inadequate; instead, the expert must explain the basis of his statements and link conclusions to specific facts." *Abshire*, 563 S.W.3d at 224; *see Columbia Valley Healthcare Sys., L.P. v. Zamarripa*, 526 S.W.3d 453, 461 (Tex. 2017) ("[W]ithout factual explanations, the reports are nothing more than the *ipse dixit* of the experts, which . . . are clearly insufficient."). A defendant may seek dismissal of a health care liability suit when the expert report is untimely or deficient, *see* TEX. CIV. PRAC. & REM. CODE § 74.351(b), and he may appeal an interlocutory order denying a motion to dismiss, "except that an appeal may not be taken from an order granting an extension under Section 74.351." TEX. CIV. PRAC. & REM. CODE § 51.014(a)(9).

**II.    This court lacks jurisdiction to review the trial court's grant of a second 30-day extension of time to cure the deficiencies in the expert report.**

Both Dr. Cook and Song challenge the court's grant of an extension of time for Broussard to cure the deficiencies in the expert report.

"Appellate courts have jurisdiction to consider immediate appeals of interlocutory orders only if a statute explicitly provides such jurisdiction." *Tex. A & M Univ. Sys. v. Koseoglu*, 233 S.W.3d 835, 840 (Tex. 2007). Interlocutory orders denying a motion to dismiss under section 74.351 are immediately appealable and are reviewed for an abuse of discretion. *See, e.g.*, *Abshire*, 563 S.W.3d at 223; *Miller v. JSC Lake Highlands Operations, LP*, 536 S.W.3d 510, 512 (Tex. 2017). However, the statute authorizing an interlocutory appeal from a denial of a motion to dismiss expressly disallows an appeal from "an order granting an extension under Section 74.351." TEX. CIV. PRAC. & REM. CODE § 51.014(a)(9); *see Ogletree v. Matthews*, 262 S.W.3d 316, 321 (Tex. 2007) ("[T]he statute plainly prohibits interlocutory appeals of orders granting extensions . . . .").

Dr. Cook and Song argue that the trial court erred and abused its discretion by affording Broussard a second 30-day extension of time to cure deficiencies in her expert report. Both argue that they are not appealing the trial court's order granting the second 30-day extension, but both also argue that the trial court misapplied the law by affording Broussard a second 30-day extension.

7

When this case was remanded after the first interlocutory appeal, Broussard filed a motion for a second 30-day extension of time to cure deficiencies in her expert report that she contended she had not had an opportunity to cure. Dr. Cook and Song objected to Broussard's motion. They argued that this court had remanded for further proceedings and that a second 30-day extension would be proper only if the trial court found that the court of appeals held the expert report to be deficient on a basis for which Broussard had not already been allowed to cure. They argued that the trial court was not required to identify the deficiencies in the expert report and that their own arguments about Dr. Kastl's qualifications had put Broussard on notice that her expert reports had been deficient. Therefore, they concluded that the first 30-day extension afforded Broussard an opportunity to cure that deficiency.

In this court, their argument depends on a conclusion that the court abused its discretion by finding that Broussard had not previously been afforded an opportunity to cure deficiencies relating to Dr. Kastl's qualifications or that the court erred by misapplying a law that gave it no discretion to permit a second 30-day extension. In his reply brief, Dr. Cook asserts:

> If the law is misapplied, there has to be a means for appealing that misapplication. Since an order granting a 30-day extension is not an appealable order, Cook's first opportunity to correct the misapplication of the 30-day extension came by appealing the last order of the trial judge overruling objections and denying Cook's

8

motion to dismiss. This Court has jurisdiction on appeal to resolve issues involving misapplication of the law.

A petition for writ of mandamus—not an unauthorized interlocutory appeal—is the proper procedural device to challenge a trial court's action when a litigant believes the court has clearly abused its discretion, for example by misapplying the law, and there is no adequate remedy by appeal. *In re Columbia Med. Ctr. of Las Colinas*, 306 S.W.3d 246, 248 (Tex. 2010) (citing *In re Prudential Ins. Co. of Am.*, 148 S.W.3d 124, 135–36 (Tex. 2004), and *In re Poly–Am., L.P.*, 262 S.W.3d 337, 346–47 (Tex. 2008)). The appellants did not file a petition for writ of mandamus after the trial court gave Broussard a second extension of time to cure the deficiencies in her expert report. "Texas policy as 'embodied in our appellate rules . . . disfavors disposing of appeals based upon harmless procedural defects.'" *CMH Homes v. Perez*, 340 S.W.3d 444, 453 (Tex. 2011) (quoting *Higgins v. Randall Cty. Sheriff's Office*, 257 S.W.3d 684, 688 (Tex. 2008), and *Verburgt v. Dorner*, 959 S.W.2d 615, 616 (Tex. 1997)). But mandamus is "controlled largely by equitable principles," *In re Int'l Profit Assocs., Inc.*, 274 S.W.3d 672, 676 (Tex. 2009), and while courts occasionally have construed appeals as petitions for writs of mandamus, they have done so only when the appellants preserved the issue by asking for mandamus relief in the alternative. *E.g.*, *CMH Homes*, 340 S.W.3d at 453; *Hodge v. Kraft*, 490 S.W.3d 510, 516 n.2 (Tex. App.—San Antonio 2015, no pet.). Dr. Cook and Song have not preserved

9

the issue or invoked this court's original jurisdiction by requesting that this appeal be treated as a mandamus petition.[3]

We conclude that we lack jurisdiction to consider this challenge on appeal. *See* TEX. CIV. PRAC. & REM. CODE § 51.014(a)(9); *Ogletree*, 262 S.W.3d at 320–21. We overrule the first issue.

## III. The trial court did not abuse its discretion by denying the motions to dismiss.

### A. Dr. Kastl and Dr. Davis were qualified to give opinions regarding Song's conduct.

Song challenges the qualifications of both Dr. Kastl and Dr. Davis to offer opinions about the standard of care for a surgical assistant.[4] When a nonphysician health care provider is the defendant in a suit involving a health care liability claim,

> a person may qualify as an expert witness on the issue of whether the health care provider departed from accepted standards of care only if the person:

---

[3]   They also did not file a motion for rehearing after this court's opinion issued in the first interlocutory appeal, nor did they file a petition for review in the Texas Supreme Court.

[4]   In his brief, Dr. Cook refers to Dr. Kastl as "unqualified," but he did not include a challenge to his qualifications in his brief. Because he did not raise an issue of the experts' qualifications in this appeal, our analysis of their qualifications is limited to their qualifications to offer opinions regarding a surgical assistant's standards of care. *See Pat Baker Co., Inc. v. Wilson*, 971 S.W.2d 447, 450 (Tex. 1998) ("It is axiomatic that an appellate court cannot reverse a trial court's judgment absent properly assigned error.").

10

(1) is practicing health care in a field of practice that involves the same type of care or treatment as that delivered by the defendant health care provider, if the defendant health care provider is an individual, at the time the testimony is given or was practicing that type of health care at the time the claim arose;

(2) has knowledge of accepted standards of care for health care providers for the diagnosis, care, or treatment of the illness, injury, or condition involved in the claim; and

(3) is qualified on the basis of training or experience to offer an expert opinion regarding those accepted standards of health care.

TEX. CIV. PRAC. & REM. CODE § 74.402(b). To determine whether a witness is "qualified on the basis of training or experience," the court will consider whether the witness is (1) certified in the area of health care relevant to the claim and (2) "is actively practicing health care in rendering health care services relevant to the claim." *Id.* § 74.402(c). "Practicing health care" means "(1) training health care providers in the same field as the defendant health care provider at an accredited educational institution; or (2) serving as a consulting health care provider and being licensed, certified, or registered in the same field as the defendant health care provider." *Id.* § 74.402(a).

Song asserts that Dr. Davis's report failed to describe any training or experience that he had on the standard of care for a surgical assistant. "Not every licensed physician is qualified to testify about every medical question." *Mangin v. Wendt*, 480 S.W.3d 701, 707 (Tex. App.—Houston [1st Dist.] 2015, no pet.)

11

(citing *Broders v. Heise*, 924 S.W.2d 148, 152 (Tex. 1996)). "The critical inquiry is 'whether the expert's expertise goes to the very matter on which he or she is to give an opinion.'" *Id.* at 707 (quoting *Broders*, 924 S.W.2d at 153). A physician "may be qualified to provide an expert report even when his specialty differs from that of the defendant 'if he has practical knowledge of what is usually and customarily done by other practitioners under circumstances similar to those confronting the malpractice defendant,' or 'if the subject matter is common to and equally recognized and developed in *all* fields of practice.'" *Id.* (quoting *Keo v. Vu*, 76 S.W.3d 725, 732 (Tex. App.—Houston [1st Dist.] 2002, pet. denied)).

Dr. Davis stated that he is board certified in surgery and plastic surgery and that he has more than a decade of experience practicing craniofacial surgery. He also stated that in his clinical practice he regularly cares for patients with injuries similar to Broussard's and performs operations like the one performed by Dr. Cook. He specifically stated: "By reason of education, training and clinical experience, I am therefore very much familiar with the standard of care that should be followed by a craniofacial plastic surgeon like Dr. Thomas Kevin Cook and a certified surgical assistant like [Song]." Because he is familiar with the standard of care for certified surgical assistants and that he has education, training, and experience with operations like the one Dr. Cook performed on Broussard, Dr. Davis was qualified to provide an expert report about whether Song departed from

12

accepted standards of care. *See Doctors Hosp. v. Hernandez*, No. 01-10-00270-CV, 2010 WL 4121678, at \*7 (Tex. App.—Houston [1st Dist.] Oct. 21, 2010, no pet.) (mem. op.) (physician was qualified to provide an expert report concerning a hospital's standard of care when he said that he was familiar with the appropriate standards of care for the relevant nonphysician health care providers employed by the hospital).

Song also argues that Dr. Kastl is not qualified to provide an expert report regarding whether a certified surgical assistant deviated from the standard of care because training during his residency is insufficient. In his second supplemental expert report, Dr. Kastl clarified that he is specifically "very familiar with the surgical procedure that Dr. Cook and his surgical assistant" performed on Broussard. He explained:

> I received training for the operative procedure performed by Dr. Cook during my residency in ophthalmology. Repairing multiple fractures, such as those suffered by Ms. Broussard, is not limited to the specialty of cranial facial and plastic surgery. Ophthalmologists are also trained in the standard of care to be followed and how deviations from the standard of care by the physician and/or the surgical assistant can cause the type of injuries suffered by Ms. Broussard. Part of my practice at Tulane University is to provide surgery to repair fractures of the type suffered by Ms. Broussard. I have performed this surgery on a number of occasions. This surgical procedure is commonly performed by the doctor, with the assistance of a certified surgical assistant (CSA), as was the case of Ms. Broussard. I am also familiar with the instrumentation that was used during this surgical procedure by both the physician, Dr. Cook, and the retractor that was being used by the CSA, [Song]. By reason of my education, training and surgical experiences, I have [sic] therefore familiar with the standard of care

that Dr. Cook and the CSA, [Song], should have followed in performing the surgical procedure on Ms. Broussard.

Dr. Kastl had education, training, and experience performing the same surgery Dr. Cook performed on Broussard, which remained part of his ongoing clinical practice. Because he explained that he is familiar with the standards of care applicable to a certified surgical assistant helping to perform this specific procedure, his expertise went to the "very matter" on which he was asked to opine and he was qualified to provide an expert report regarding whether Song deviated from the standard of care. *See Mangin*, 480 S.W.3d at 707 (quoting *Broders*, 924 S.W.2d at 153); *Doctors Hosp.*, 2010 WL 4121678, at *7.

### B. The expert reports were adequate and represented a good faith effort to comply with the statute.

Dr. Cook and Song challenge the adequacy of the reports.[5] Both appellants analyze the reports from Dr. Kastl and Dr. Davis separately and conclude that neither witness provided a report that satisfied all the statutory requirements. These arguments are unavailing because "multiple expert reports may be read together" to determine whether the statutory requirements have been met. *Abshire*, 563 S.W.3d at 223 (citing TEX. CIV. PRAC. & REM. CODE § 74.351(i)). Therefore, we

---

[5] Dr. Kastl provided three reports: his initial report and two supplements. He stated that he was familiar with the surgery that Dr. Cook performed on Broussard and in his second supplemental report he explained how he, as an ophthalmologist, had education, training, and experience with this type of surgery. Dr. Davis provided one report summarizing his qualifications and opinions.

14

will consider the reports of Dr. Kastl and Dr. Davis together to determine whether the statutory requirements have been met.

### *Standards of care & breach of the standards of care*

Both Dr. Cook and Song argue that the reports are inadequate because they do not identify what either of them should have done differently to change the outcome. Both appellants contend that the reports merely opine that the injury itself, a torn eyelid, is a breach of the standard of care.

Both Dr. Kastl and Dr. Davis relied on the operative report for information about what happened during the operation. In his first report, Dr. Kastl stated that Broussard's "lower lid was torn by a retractor," when one or both of Dr. Cook and Song "made an inappropriate movement" during the procedure. In that report, Dr. Kastl wrote: "The report of the procedure is unclear as to whether Dr. Cook and/or CSA Song made the inappropriate movement causing injury to Mrs. Broussard." In his second report, Dr. Kastl quoted from the operative report:

> The inferior orbital rim on the medial side was displaced inferiorly and posteriorly. It was grasped with an instrument to gently work it out and into position. At this time, the instrument slipped and a Desmarres retractor, which was retracted in the medial aspect of the lid, placed excessive tension [sic] placed on it. There was a subsequent tear in the lid at the level just lateral to the medial canthus.

Dr. Kastl explained: "As is evident from this quote from the operative report, at the time of the injury, Dr. Cook was holding an instrument that 'slipped,' and that a Desmarres retractor, which was held by CSA [Song], placed excessive

15

tension on the medial aspect of the lid." Dr. Davis described the incident: "While reducing the inferior rim of the orbit, the instrument being used for the reduction slipped and a Desmarres retractor already in place caused excessive tension on the lower lid. The combination caused an avulsion injury of the lower lid that also tore through the lower lid lacrimal system." In other words, Dr. Davis described an injury caused by the combination of the slipping of the instrument and tension applied by the retractor. Dr. Davis also noted the ambiguity in the operative report: "It is not clear from the operative report if Dr. Thomas Kevin Cook or his surgical assistant Song, CSA specifically caused the injury. What is known is that an uncontrolled maneuver occurred which resulted in a wildly significant avulsion injury of the lower lid." Calling the injury "significant," Dr. Davis opined that it was "caused by the loss of control of surgical instrumentation during the case."

In *Baty v. Futrell*, 543 S.W.3d 689 (Tex. 2018), a cataract patient alleged that a certified nurse anesthetist caused her permanent nerve damage and vision loss by improperly injecting anesthesia during cataract surgery. 543 S.W.3d at 690. Baty sued for negligence and filed expert reports that identified the standard of care to include not injuring the optic nerve when administering the retrobulbar anesthetic block and the breach of that standard to include damaging her optic nerve by "sticking it with the retrobulbar needle." *Id.* at 691. The trial court granted the defendant's motion to dismiss, and a divided court of appeals affirmed,

16

"holding the report is inadequate as to the standard-of-care element because it is silent as to 'what an ordinarily prudent CRNA should have done in this instance' and is therefore conclusory." *Id.* at 692 (quoting the court of appeals opinion).

The Texas Supreme Court disagreed that the report was conclusory because the witness did not "simply state in the report that he knows the standard of care and concludes that it was not met," nor did he "improperly equate negligence with a bad or unsuccessful result," or opine that the CRNA was negligent "merely because the cataract surgery was unsuccessful or because Baty suffered permanent nerve damage or vision loss." *Id.* at 696. Rather, the Supreme Court concluded: "Inserting the needle into the optic nerve is not a result, good or bad; it is conduct that allegedly caused a bad result in this case. And it is this specific conduct that [the expert witness] opines falls below the standard of care." *Id.* Accordingly, the Supreme Court held that the report sufficiently addressed causation. *Id.* at 697.

Considering all the reports together, we conclude that Dr. Kastl and Dr. Davis stated the standard of care applicable to both Dr. Cook and Song was to maintain control of the surgical instrumentation and that they breached the standard by failing to do so. The expert reports in this case do not merely state that Dr. Cook and Song were negligent because Broussard's eyelid was torn, nor do they summarily state that Dr. Kastl and Dr. Davis know the standard of care and

that it was not met. As in *Baty*, the reports identify specific conduct, losing control of the surgical instrumentation, that fell below the standard of care.

### *Causation*

Considering the reports together, both Dr. Kastl and Dr. Davis opined that the uncontrolled maneuver that occurred when either or both Dr. Cook and Song lost control of the surgical instrumentation caused Broussard's the tear in Broussard's eyelid and tear duct system, which necessitated corrective surgery and ongoing care. This satisfies the statutory requirement to provide a fair summary of the "causal relationship" between the health care provider's failure to meet the standards of care and "the injury, harm, or damages claimed." TEX. CIV. PRAC. & REM. CODE § 74.351(r)(6).

### *Good faith effort*

Both Dr. Cook and Song argue that the reports do not constitute a good faith effort to comply with the statute because they do not identify which of them is liable for the injury. Broussard was not required to marshal all her evidence in response to the motion to dismiss. *See Abshire*, 563 S.W.3d at 223–24. The expert reports rely on the operative report, and they inform both Dr. Cook and Song of the specific conduct complained of, the loss of control of surgical instrumentation. The reports also provide the court with a basis on which to conclude that the claims have merit. *See id.* In particular, in addition to identifying the standard of care, the

18

breach, and the how that breach caused Broussard's injury, both expert reports indicate that the injury that Broussard suffered is not a typical complication of the surgery performed by Dr. Cook. Dr. Davis stated: "Eyelid avulsion injury and injury of the lacrimal system in this manner is not a complication that would be discussed in the process of informed consent." Dr. Kastl stated: "There is no circumstance of this surgery where a torn eyelid is a known complication." In other words, the expert reports informed the court that the injury sustained by Broussard, which the expert witnesses opined was caused by the appellants' breach of the standard of care, was more than an unsuccessful surgery. *See Baty*, 543 S.W.3d at 696. Because the expert reports informed the appellants of the specific conduct that was challenged and gave the trial court a basis for concluding that Broussard's claim has merit, they represented a good faith effort to comply.

\* \* \*

We conclude that the expert reports were adequate and a good faith effort to comply. Accordingly, we hold that the trial court did not abuse its discretion by denying the motions to dismiss.

**Conclusion**

We affirm the order of the trial court.


Peter Kelly
Justice

Panel consists of Justices Lloyd, Kelly, and Goodman.